(82 P.3d 861)
Nos. 89,061; 89,062; 89,063; 89,064; 89,065;
89,066; 89,067; 89,068; 89,069; 89,070; 89,071; 89,072

In the Matter of the Care and Treatment of DONALD HUNT, *et al.*

Opinion filed January 23, 2004.

*Michael G. Highland,* of Bonner Springs, for appellants.

*Sheryl A. Bussell,* special assistant attorney general, *Terra Morehead,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, for appellees.

Before BEIER, P.J., JOHNSON, J., and WAHL, S.J.

BEIER, J.: This consolidated appeal addresses the district court's refusal to dismiss sexually violent predator actions filed against Donald Hunt, William Sells, Sutton Lovingood, Daniel Ingold, Steven Robbins, George Dudley, William Craft, Billy Stanley, George Gilmore, Boyd Huntington, III, Randy Taylor, and Charles Snyder.

Each of these men was found to be a sexually violent predator and civilly committed for treatment pursuant to the Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.* Each now argues that he should be discharged because his trial did not begin within 60 days of his probable cause hearing, as required by K.S.A. 2002 Supp. 59-29a06, and that the district court therefore lacked jurisdiction.

## Factual Background

The nature of the appellant's claims requires us to focus on the timing of events in each case.

Donald Hunt

In September 1995, the State filed its petition against Hunt. His probable cause hearing was September 19, 1995. The court found probable cause existed and ordered that Hunt be transferred to Larned State Security Hospital (LSH) for an evaluation. The order provided trial would be set within 60 days.

On November 6, 1995, 1 week before the 60-day period expired, Hunt orally moved at a hearing to continue his trial pending the decision of the Kansas Supreme Court on the constitutionality of the SVPA. The motion was granted.

On March 1, 1996, the Kansas Supreme Court issued its decision in *In re Care & Treatment of Hendricks*, 259 Kan. 246, 912 P.2d 129 (1996), *rev'd Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), holding the SVPA unconstitutional.

Several weeks later, the United States Supreme Court stayed the mandate in *Hendricks,* pending further consideration. *Kansas v. Hendricks*, 517 U.S. 1153 (1996).

On April 26, 1996, within 60 days after the Kansas Supreme Court issued its ruling in *Hendricks*, the district court held another hearing in Hunt's case. Hunt's attorney again asked for a continuance until the temporary stay of the United States Supreme Court was resolved. The continuance was granted.

On June 17, 1996, the United States Supreme Court granted certiorari. *Kansas v. Hendricks*, 518 U.S. 1004 (1996).

Hunt's case remained inactive for another 5 months before he was found to be a sexually violent predator at a trial on September 16 and 17, 1996.

In February 2002, Hunt filed a pro se motion to dismiss the case, apparently raising for the first time the State's failure to bring him to trial within 60 days of his probable cause hearing. In March 2002, after a hearing on Hunt's motion and similar motions filed in a number of other SVPA cases, the district court ultimately denied Hunt's motion. The court concluded Hunt's requests for continuance waived his right to a speedy trial.

William Sells

In May 1999, the State filed its petition against Sells. At his probable cause hearing on June 18, 1999, Sells stipulated to the

existence of probable cause. The court ordered Sells transferred to LSH for evaluation, and the order provided trial would be set within 60 days.

October 1999 bench notes indicate Sells' trial was continued, apparently on the court's motion, because the court was unable to schedule the matter. These notes were made approximately 120 days after the probable cause hearing. A month later, the State obtained a continuance because its witnesses were not available.

In December 1999, Sells waived his right to jury trial and, after hearing evidence, the district court found he was a sexually violent predator. Sells does not claim on this appeal that he challenged the timeliness of his trial at that point.

In March 2002, Sells filed a motion to dismiss his case because the trial was not held within 60 days of the probable cause hearing. After a hearing, the district court denied Sells' motion, holding Sells waived his claim by stipulating to the court's finding that he was a sexually violent predator.

Sutton Lovingood

In November 1994, the State filed its petition against Lovingood. The district court held a probable cause hearing on November 16, 1994; found probable cause; and ordered Lovingood evaluated. The order provided trial would be scheduled for January 11, 1995.

On January 4, 1995, more than 45 days but fewer than 60 days after the probable cause hearing, the court granted a written motion filed by Lovingood's attorney for a continuance of "at least" 45 days in order to locate an expert witness and complete discovery. The court rescheduled trial for March 20, 1995.

Shortly before the March trial date, Lovingood's attorney filed another motion for continuance, asserting that his expert was unavailable on the scheduled trial date. According to bench notes, the court granted the motion "for good cause shown."

Lovingood was found to be a sexually violent predator after trial commencing May 30, 1995, fewer than 90 days after his second continuance. On the day of trial, Lovingood filed a motion to dismiss the action, claiming the SVPA was unconstitutional, but he did not assert any jurisdictional flaw or violation of a right to speedy

trial. Lovingood's claims were rejected on appeal in *In re Care & Treatment of Lovingood*, Case No. 74,653, unpublished opinion filed April 30, 1999.

In March 2002, Lovingood filed a motion to dismiss his case because he was not brought to trial within 60 days of the probable cause hearing. The district court denied the motion, holding Lovingood had waived any speedy trial claim by requesting two continuances.

Daniel Ingold

In September 2000, the State filed its petition against Ingold. After his probable cause hearing on September 15, 2000, the district court found probable cause and ordered Ingold evaluated. The order scheduled trial for November 13, 2000.

On November 13, 2000, 59 days after the probable cause hearing, the court granted Ingold's motion for continuance for "good cause shown." The matter was rescheduled for January 12, 2001.

On January 12, 2001, Ingold appeared, waived his right to a trial, and stipulated there was sufficient evidence from which to find him a sexually violent predator. The court so found.

In March 2002, Ingold filed a motion to dismiss because he was not brought to trial within 60 days after the probable cause hearing. The court denied the motion, holding Ingold waived his right to assert the argument by stipulating to his status.

Steven Robbins

In September 1996, the State filed its petition against Robbins. The district court held the probable cause hearing on September 27, 1996; found probable cause; and ordered Robbins evaluated. The order provided trial would be set within 60 days.

On November 14, 1996, 48 days after the probable cause hearing, Robbins' counsel requested a continuance; the continuance was granted to allow Robbins to be evaluated by his own expert. The case was apparently reset for trial; but, on February 10, 1997, Robbins' counsel filed a written motion for continuance, asserting he needed additional time for his expert to complete his assess-

ments. Robbins requested at least 30 days' additional time. The court granted the request.

Between February and September 1997, Robbins was actively pursuing written discovery from the State. Robbins served written interrogatories and requests for production of documents, as well as two motions to compel. On September 29, 1997, the parties appeared for trial. At this time, Robbins waived his right to a trial and stipulated that there was sufficient evidence to find him to be a sexually violent predator.

In March 2002, Robbins filed a motion to dismiss the case, claiming the court lacked jurisdiction over him because he was not brought to trial within 60 days of his probable cause hearing. The trial court denied Robbins' motion, holding he waived his right to speedy trial by requesting and obtaining two continuances and by stipulating to the finding he was a sexually violent predator.

George Dudley

In January 2001, the State filed its petition against Dudley. The district court held his probable cause hearing on January 19, 2001; found probable cause; and ordered Dudley evaluated. The matter was set for trial on March 12, 2001.

Approximately 1 week before expiration of the 60-day period, the State requested a continuance because Dudley was still at LSH. The trial court continued the trial for good cause shown until a report from LSH had been received. Dudley claims he objected to this continuance, but the judge's bench notes do not reflect any objection.

On May 7, 2001, 48 days after the prior continuance, Dudley appeared for a trial. Dudley waived trial and stipulated there was sufficient evidence to find him a sexually violent predator. The court so found.

On March 5, 2002, Dudley filed a motion to dismiss based on the 60-day limitation for commencement of trial. The district court denied the motion, holding that trial had been continued for good cause and that Dudley had waived his right to speedy trial by stipulating to the court's ultimate finding.

### William Craft

In August 1998, the State filed its petition against Craft. The district court held his probable cause hearing on August 14, 1998; found probable cause; and ordered Craft evaluated. The order provided trial would be set within 60 days.

According to the court's bench notes, on September 24, 1998, within the 60-day period, the court set the case for trial in December "per agreed upon requests for both sides." The transcript from this hearing indicates the State requested the delay because the court's trial docket was full; Craft's attorney had no objection to the continuance and noted he might want Craft to undergo another evaluation anyway.

On December 14, 1998, Craft appeared, waived his right to a jury trial, and stipulated there was sufficient evidence to find him a sexually violent predator. The court made that finding.

In March 2002, Craft filed a motion to dismiss his case, citing the 60-day time limit. In his motion, Craft asserted no continuances had been granted. The district court denied the motion, holding Craft had waived any right to pursue the issue by stipulating to the court's ultimate finding.

### Billy Stanley

In April 1999, the State filed its petition against Stanley. The district court held the probable cause hearing on May 7, 1999; found probable cause; and ordered Stanley evaluated. The order provided trial would be set within 60 days.

On June 29, 1999, within the 60-day time limit, the parties and court agreed that the court's calendar would not accommodate a trial before September. A journal entry was signed by attorneys for both sides.

On August 16, 1999, fewer than 50 days after the continuance was ordered, the parties appeared for trial. Stanley waived his right to a trial and stipulated there was sufficient evidence to find him a sexually violent predator. The court then made that finding.

In March 2002, Stanley filed a motion to dismiss based on the 60-day time limit. The trial court denied the motion, holding Stan-

ley waived his right to advance this issue by stipulating to the court's ultimate finding.

George Gilmore

In April 1999, the State filed its petition against Gilmore. The district court held the probable cause hearing on May 7, 1999; found probable cause; and ordered Gilmore evaluated. The order provided trial would be set within 60 days.

On June 29, 1999, within the 60-day time limit, the parties and court agreed that the court's calendar would not accommodate a trial before September. A journal entry was signed by attorneys for both sides.

On August 16, 1999, fewer than 50 days after the continuance was issued, the parties appeared before the court. Gilmore waived his right to trial and stipulated there was sufficient evidence to find him a sexually violent predator. The court then made that finding.

In March 2002, Gilmore filed a motion to dismiss his case based on the 60-day time limit. The district court denied the motion, holding Gilmore waived his right to pursue this issue by stipulating to the court's ultimate finding.

Boyd Huntington, III

In September 2000, the State filed its petition against Huntington. The district court held the probable cause hearing on September 15, 2000; found probable cause; and ordered Huntington evaluated. Trial was set for November 13, 2000.

On November 13, 2000, the day before the 60-day limit expired, the parties appeared before the court. Contemporaneous bench notes state: "Stipulation hearing continued, case to be set for trial at R[espondent's] request."

On January 12, 2001, fewer than 60 days after the continuance was ordered, the parties appeared for trial. Huntington waived his right to trial and stipulated there was sufficient evidence to find him a sexually violent predator. The court then made that finding.

Huntington claims he filed a motion to dismiss his case based on the 60-day time limit in March 2002, but the motion is not included in the record on appeal and the appearance docket does

not reflect its filing. However, a journal entry was filed in which the district court denied such a motion. The court held Huntington waived the right to pursue the issue by stipulating to the court's ultimate finding.

### Randy Taylor

In February 2000, the State filed its petition against Taylor. On February 18, 2000, the district court held the probable cause hearing, at which Taylor stipulated to the existence of probable cause. The court found probable cause and ordered Taylor evaluated. The order provided trial would be set within 60 days.

On June 1, 2000, approximately 100 days after the probable cause hearing, Taylor waived his right to trial and stipulated there was sufficient evidence to find him a sexually violent predator. The district court then made that finding. Taylor's appearance docket reflects no motion for continuance filed before April 18, 2000, when the 60 days from the time of his probable cause hearing would have run. The record also contains no bench notes reflecting any continuances requested or granted orally before that date.

In March 2002, Taylor filed a motion to dismiss because his trial was not held within 60 days of the probable cause hearing. After hearing, the trial court denied Taylor's motion, holding he waived his claim by stipulating to the court's ultimate finding.

### Charles Snyder

In July 2000, the State filed its petition against Charles Snyder. The district court held the probable cause hearing on August 18, 2000; found probable cause; and ordered Snyder evaluated. The order set an October 9, 2000, trial date.

On October 2, 2000, within the 60-day limit, the court held a hearing and found its calendar was overcrowded. The court ordered a continuance. Bench notes from several days later indicate the court received a report from LSH.

December 1, 2000, bench notes indicate trial was continued at Snyder's request so he could obtain an independent evaluation.

Six weeks later, on January 12, 2001, the parties appeared for trial. Snyder waived his right to a trial and stipulated there was

sufficient evidence to find him a sexually violent predator. The court then made that finding.

In March 2002, Snyder filed his motion to dismiss based on the 60-day time limit. The district court denied the motion, holding Snyder waived his claim by stipulating to the court's ultimate finding.

## Analysis

Each of the appellants contends the district court lost jurisdiction of his case because he was not brought to trial within the 60-day time frame set forth in K.S.A. 2002 Supp. 59-29a06. At the time of the filing of these cases, that statute read:

"Within 60 days after the completion of any hearing held pursuant to K.S.A. 59-29a05 and amendments thereto, the court *shall* conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced." (Emphasis added.) K.S.A. 2002 Supp. 59-29a06.

The district court's rationale for rejecting appellants' motions to dismiss varied from case to case among three possibilities. The first rationale was that one or more properly granted continuances, sometimes sought by the appellant, tolled the running of the 60 days. The second rationale was that the appellant's ultimate stipulation to his status as a sexually violent predator excused the State from compliance with the 60-day requirement. The third rationale was a combination of the first two.

In order to decide the issue in this case, we must interpret the SVPA, K.S.A. 59-29a01 *et seq.* Statutory interpretation raises a question of law subject to de novo review. *In re Care & Treatment of Brown*, 26 Kan. App. 2d 117, 118, 978 P.2d 300 (1999).

Appellants contend that, if the 60-day statutory period expired without the granting of a continuance, the district court lost jurisdiction. They assert that even a later stipulation to their status as sexually violent predators could not cure the jurisdictional defect. If, on the other hand, a timely continuance was granted, they assert that the case had to be brought to trial within 60 days of the continuance order.

Appellants point to several recent Court of Appeals and Supreme Court cases in support of their jurisdictional argument. See *In re Care & Treatment of Searcy*, 274 Kan. 130, 49 P.3d 1 (2002); *In re Care & Treatment of Blackmore*, 30 Kan. App. 2d 90, 94, 39 P.3d 89 (2002); *In re Care & Treatment of Goracke*, 27 Kan. App. 2d 837, 839, 9 P.3d 595 (2000); *In re Care & Treatment of Brown*, 26 Kan. App. 2d at 120.

The starting point for these cases was the Supreme Court's decision in *In re Care & Treatment of Ingram*, 266 Kan. 46, 965 P.2d 831 (1998). In *Ingram*, the Supreme Court interpreted the SVPA's statutory time limit for filing of petitions, interpreting K.S.A. 1997 Supp. 59-29a04. That statute required that a petition be filed within 75 days of the date the attorney general received written notice from the custodial agency holding the person subject to consideration for SVPA proceedings. 266 Kan. at 47-49.

In *Ingram*, the petition was not filed within the 75-day time limit. The Supreme Court held that the statute was clear and unambiguous. Because it provided the "sole authority" for the State to pursue a SVPA commitment, the court held the 75-day provision "jurisdictional." 266 Kan. at 49. There was, in the court's view, no provision for commencement of an SVPA proceeding beyond that point. 266 Kan. at 49.

Several years later, the Court of Appeals was faced with interpreting the 60-day time limit at issue here. In *In re Care & Treatment of Brown*, 26 Kan. App. 2d 117, the respondent was not brought to trial within 60 days of the court's finding of probable cause, and no continuances were requested or granted. The respondent filed a pretrial motion to dismiss the case based on the 60-day time limit. The district court held the time limit was merely directory.

A panel of our court reversed, citing *Ingram* and concluding that, like the 75-day time limit in 59-29a04 for filing a petition, the 60-day time limit for trial in 59-29a06 was "mandatory and jurisdictional." 26 Kan. App. 2d at 120.

*Brown* did not consider whether *Ingram*'s holding should be distinguished because it dealt with a time limit for commencing an action, *i.e.*, investing the court with jurisdiction, rather than a time

limit related to trial scheduling. *Brown* simply interpreted 59-29a06 to divest a court of jurisdiction even after an action had been properly commenced.

The *Brown* panel's use of the "jurisdictional" label was unnecessary because the respondent had made a timely objection to the lack of a "speedy trial." In addition, it appears the panel may not have been aware that the 1999 legislature had amended the statute cited in *Ingram*. After *Ingram* was filed, the statute was amended to add a subsection specifically stating that the 75-day time limit was *not* jurisdictional. L. 1999, ch. 140, sec. 4; see K.S.A. 2002 Supp. 59-29a04(b).

The next case to arrive at the Court of Appeals was *In re Care & Treatment of Goracke*, 27 Kan. App. 2d 837. It presented a slightly different factual scenario. In that case, the State had requested and received one continuance within the 60-day time limit. Thereafter two of the attorneys appointed to represent Goracke withdrew, and a third filed a motion for an independent psychological exam. Approximately 4 months after the motion was filed, Goracke waived his right to jury trial and was found to be a sexually violent predator.

The Court of Appeals panel noted that the 60-day time limit was mandatory and that only a "specific motion for continuance" would toll it. 27 Kan. App. 2d at 839. Because a timely continuance was ordered and the subsequent delays were caused primarily by the changes in Goracke's counsel and the request for an independent medical evaluation, the panel upheld the ultimate commitment decision. 27 Kan. App. 2d at 840.

The third case before the Court of Appeals was *In re Care & Treatment of Blackmore*, 30 Kan. App. 2d 90. In *Blackmore*, trial was scheduled for August 2000, approximately 4 months after the probable cause hearing. Before expiration of the 60-day statutory period, no recorded motions for continuance were filed. Shortly before trial was set to begin, Blackmore filed a motion for continuance because witnesses were not available. The motion was granted, and the case rescheduled for trial in October 2000. After Blackmore was found to be a sexually violent predator, he appealed, challenging the delay in his trial.

The *Blackmore* panel discussed both *Brown* and *Goracke*. Noting that *Brown* had held that the 60-day time limit was "mandatory and jurisdictional" and that subject matter jurisdiction issues could be raised at any time, the panel excused Blackmore's failure to object to the timing of his trial before the district court. 30 Kan. App. 2d at 93-94. The *Blackmore* panel specifically rejected the State's argument that the 60-day period should be treated like a speedy trial claim in a criminal case and thus be considered waived if not raised in a timely fashion. 30 Kan. App. 2d at 94. The panel also observed that 59-29a06 contained a timing provision virtually identical to that under examination in *Ingram* and, "absent language to the contrary, the statute is jurisdictional." 30 Kan. App. 2d at 95. Because no motion for extension was made or granted before the expiration of the 60-day time limit, the panel agreed with Blackmore that the district court lost jurisdiction of the matter and reversed his SVPA commitment. 30 Kan. App. 2d at 95-96.

Most recently, the Supreme Court weighed in on this issue in *Searcy*, 274 Kan. 130. In *Searcy*, the respondent was tried and found to be a sexually violent predator; the trial occurred approximately 9 months after his probable cause hearing was waived. For the first time on appeal, Searcy raised the 60-day limit in K.S.A. 2002 Supp. 59-29a06.

Before the waiver, Searcy had attempted to remove the case to federal court and had filed a motion to change venue. The case was originally set for trial more than 60 days after the probable cause determination. Between the probable cause determination and the trial date, there were a number of motions in the state and federal courts and Searcy's attorney conducted discovery. After the 60 days had run, but before the trial date, the State filed two motions for continuance; each was granted.

Our Supreme Court reversed Searcy's commitment. 274 Kan. at 144. The Supreme Court first discussed the 75-day time limit in K.S.A. 2002 Supp. 59-29a04, which had been designated "jurisdictional" in *Ingram*, noting it was the sole authority for commencing an action. The court also noted that the legislature had amended 59-29a04 less than a year after *Ingram* was decided and that the statute now stated explicitly that its time limit was not jurisdictional.

274 Kan. at 137. After reviewing *Brown* and *Blackmore*, the court stated 59-29a06 was "analogous to the statutory right to speedy trial in criminal cases." 274 Kan. at 142. The court nevertheless held that the 60-day period was "jurisdictional, mandatory, and a statutory right granted to respondents." Because of the absence of a motion for continuance within the 60 days, the court reversed. 274 Kan. at 144.

One might justly criticize *Searcy* and at least the *Brown* and *Blackmore* decisions from panels of our court for being too quick to equate the terms "mandatory" and "jurisdictional" with regard to 59-29a06. This provision is, in fact, analogous to our statutes of limitations or speedy trial statute, which are mandatory but subject to waiver. Furthermore, by the time *Brown*, *Blackmore*, and *Searcy* were decided, the legislature had stated unambiguously through its 1999 amendment to 59-29a04 that the 75-day time limit on which *Ingram* rested was not intended to be jurisdictional. And that time limit was a far more likely candidate for the "jurisdictional" label than the 60-day time limit in K.S.A. 2002 Supp. 59-29a06, because 59-29a04 set forth the requirements for proper *commencement* of an SVPA action rather than *merely the procedure employed* once an action was under way.

At this stage, however, we are duty bound to follow our Supreme Court's precedent. See *Mueller v. State*, 28 Kan. App. 2d 760, 763, 24 P.3d 149, *rev. denied* 271 Kan. 1037 (2001), *cert. denied* 535 U.S. 997 (2002). *Searcy* must carry the day unless subsequent developments in the legislature or in Supreme Court cases have altered or limited its holding or called it into question. Absent such developments, *Searcy* requires us to reverse each of the cases before us in which no formal motion for continuance was granted within the 60-day time limit. It does not matter that the "jurisdictional" issue has been raised for the first time on appeal or later; a defect in subject matter jurisdiction may be raised at any time.

There have been legislative developments we must address. As discussed above, the 1999 statutory amendments addressed only the 75-day time limit in 59-29a04. See L. 1999, ch. 140, sec. 4; K.S.A. 2002 Supp. 59-29a04(b). At that point, there had been no cases in which the 60-day time limit of 59-29a06 had been held to

be jurisdictional. Since oral argument in this case, the legislature attempted to respond to *Brown, Blackmore,* and *Searcy.*

During the 2003 session, the legislature passed, and the governor signed, House Substitute for Senate Bill No. 27, L. 2003, ch. 152, which contained amendments to the SVPA. These amendments specifically provide that none of the time limits in the SVPA is intended now or ever was intended to be mandatory or to otherwise affect the district courts' subject matter jurisdiction.

As amended in 2003, 59-29a01 now reads:

"Notwithstanding any other evidence of legislative intent, it is hereby declared that any time requirements set forth in K.S.A. 59-29a01 et seq. . . ., *either as originally enacted or as amended,* are intended to be directory and not mandatory . . . . [Emphasis added.]" L. 2003, ch. 152, sec. 1.

In addition, a new subsection to K.S.A. 2002 Supp. 59-29a06 reads:

"(e) The provisions of this section are *not jurisdictional,* and failure to comply with such provisions in no way prevents the attorney general from proceeding against a person otherwise subject to the provision of K.S.A. 59-29a01 et seq., and amendments thereto." [Emphasis added.] L. 2003, ch. 152, sec. 3.

These revisions went into effect on publication, *i.e.,* on July 1, 2003. See L. 2003, ch. 152, sec. 9. We must therefore analyze whether the amended language applies retroactively to appellants' proceedings.

In determining whether the provisions of any statute apply prospectively or retroactively, the general rule is that a statute operates only prospectively unless there is clear language indicating the legislature intended otherwise. *In re Tax Appeal of Alsop Sand Co., Inc.,* 265 Kan. 510, 523, 962 P.2d 435 (1998). However, the United States Supreme Court and other jurisdictions have recognized at least two exceptions to this general rule that are relevant here.

The first exception applies when an amendment affects a court's subject matter jurisdiction. The other applies when an amendment merely clarifies rather than changes a statute.

In *Landgraf v. USI Film Products,* 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), the United States Supreme Court addressed whether 1991 amendments to 42 U.S.C. § 1981 (1988

ed. Supp. IV) applied retroactively to cases pending before the amendments' effective date. The 1991 amendments gave plaintiffs the right to recover compensatory and punitive damages and to receive a jury trial for certain violations of Title VII of the Civil Rights Act. Some of the amendments were enacted in response to a series of Supreme Court decisions interpreting various civil rights statutes.

In *Landgraf*, the Court discussed at length the presumption against retroactivity of statutes. 511 U.S. at 263-73. The Court found the 1991 amendments affected substantive rights and, therefore, the presumption against retroactivity applied. Because the new statute did not explicitly state it would apply retroactively, the Supreme Court held the amendments could not apply to cases arising before their enactment. 511 U.S. at 286.

In doing so, however, the Supreme Court also recognized there were a number of circumstances where the presumption against retroactivity simply did not apply. 511 U.S. at 273. One such circumstance involved statutes conferring or deleting a court's subject matter jurisdiction in particular cases. The Court noted:

"We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. Thus, in *Bruner v. United States*, 343 U.S. 112, 116-117[, 96 L. Ed. 786, 72 S. Ct. 581] (1952), relying on our 'consisten[t]' practice, we ordered an action dismissed because the jurisdictional statute under which it had been (properly) filed was subsequently repealed. [Citations omitted.] Conversely, in *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607-608, n. 6[, 56 L. Ed. 2d 570], 98 S. Ct. 2002 (1978), we held that, because a statute passed while the case was pending on appeal had eliminated the amount-in-controversy requirement for federal-question cases, the fact that respondent had failed to allege $10,000 in controversy at the commencement of the action was 'now of no moment.' [Citations omitted.] *Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'* *Hallowell [v. Commons]*, 239 U.S. 506, 508[, 60 L. Ed. 409, 36 S. Ct. 202 (1916)]. Present law normally governs in such situations *because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'* *Republic Nat. Bank of Miami [v. United States]*, 506 U.S. [80,] at 100 [121 L. Ed. 2d 474, 113 S. Ct. 554 (1992) (Thomas, J., concurring)]." (Emphasis added). 511 U.S. at 274.

The reasoning in *Landgraf* seems to be applicable in this case to the extent our courts have treated the time limits of 59-29a06

as a question of subject matter jurisdiction. Because the amendments can be characterized as speaking only to the power of the court to hear appellants' commitment cases rather than granting or denying any substantive rights to the appellants, retroactively applying the statute would be appropriate under this exception. This result leads to an anomaly, however, given the 2003 amendments' language clearly indicating the 60-day time limit was never intended to be interpreted to affect the existence of a court's subject matter jurisdiction.

The second exception to the presumption against retroactivity potentially applicable here involves amendments designed purely to clarify the meaning of an earlier enactment. For example, in *Beverly Community Hosp. Ass'n v. Belch*, 132 F.3d 1259 (9th Cir. 1997), *cert. denied* 525 U.S. 928 (1998), the court addressed the retroactivity of a statutory amendment relating to Medicare. Noting that the Secretary of Health and Human Services and federal courts had disagreed over the meaning of the prior statute, the amendments constituted a clarification of existing law rather than a substantial change in that law. The application of the amendment to pending cases, including those on appeal, consequently did not pose potential constitutional problems. 132 F.3d at 1266-67.

*Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1283 (11th Cir. 1999), *cert. denied* 528 U.S. 1136 (2000), also is illustrative. In that case, the court applied the law as set forth in a clarifying amendment to a pending proceeding because the amendment accurately restated the prior law. In *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 941, (10th Cir. 1994), the court held that, under Oklahoma law, a clarifying amendment that explained an ambiguous statute to more clearly express legislative intent would be given retroactive application if it did not impair vested rights.

Application of the clarifying amendment exception would require us to determine whether the 2003 amendments to the SVPA truly "clarified" the statute rather than changed it. In *Piamba Cortes*, the Eleventh Circuit Court of Appeals suggested various factors that should be considered:

"A significant factor is whether a conflict or ambiguity existed with respect to the interpretation of the relevant provision when the amendment was enacted. If such

an ambiguity existed, courts view this as an indication that a subsequent amendment is intended to clarify, rather than change, the existing law. [Citation omitted.] Second, courts may rely upon a declaration by the enacting body that its intent is to clarify the prior enactment. [Citation omitted.] Courts should examine such declarations carefully, however, especially if the declarations are found in the amendment's legislative history rather than the text of the amendment itself. [Citation omitted.]" 177 F.3d at 1283-84.

Previously, the 60-day time limit of 59-29a06 has been consistently interpreted as jurisdictional, by our court and our Supreme Court, even if that interpretation now appears to be incorrect. The counterweight to this interpretation is the 2003 amendments' expression of the 2003 legislature's obvious intention that the changes be seen as clarifying the intention of the legislature that enacted the original language. The amended version of K.S.A. 2002 Supp. 59-29a01 states: "[A]ny time requirements set forth in K.S.A. 59-29a01 et seq. . . . , *either as originally enacted or as amended*, are intended to be directory and not mandatory . . . .(Emphasis added.)" L. 2003, ch. 152, sec. 1. There can be little doubt that legislators were aware of *Brown, Blackmore,* and *Searcy* and did not agree with their results.

The Tenth Circuit Court of Appeals has expressed some skepticism about such legislative attempts to overturn a judicial interpretation by passing "clarifying" amendments. In *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.,* 911 F.2d 1377 (10th Cir. 1990), *cert. denied,* 498 U.S. 1074 (1991), the court rejected retroactivity as an effect of clarification without an additional clear statement that retroactivity was intended:

"When a subsequent Congress amends the law in response to the Supreme Court's interpretation, it does not revive the original enacting Congress's interpretation of the statute which existed before the Supreme Court's interpretation. Rather, the result of a subsequent Congress's 'restoration' efforts is newly created law. As with any newly enacted legislation, Congress must state clearly its intentions with regard to retroactivity." 911 F.3d at 1388.

Given our ambivalence about the soundness of the jurisdictional holding of the *Brown-Blackmore-Searcy* line of decisions and our confidence that those cases probably would come out the other way if decided today, we are unwilling to apply either the subject

matter jurisdiction exception or the clarifying amendment exception to avoid the presumption of no retroactivity in this case. As mentioned, application of the subject matter jurisdiction exception leads to an anomalous result, an analytical disconnect. We are also troubled by the fact that the supposedly clarifying amendments were clearly motivated not by inconsistent decisions exposing an ambiguity but by consistent decisions the legislature merely found unpalatable and wished to overturn. Especially given our position as an intermediate court, we are reluctant to grant the legislature that absolute power here.

The latest Kansas Supreme Court case to examine retroactivity did not address either the subject matter jurisdiction or clarifying amendment exceptions to the general rule that statutory amendments are not retroactive. Moreover, it provided for further court review of a potentially retroactive enactment, even when the legislature had expressed a clear preference for retroactive application. In that case, *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 220-28, 73 P.3d 753 (2003), the court merely stated the presumption of no retroactivity absent a clear legislative intent to the contrary. It required courts to engage in a further inquiry to discern whether retroactive application would affect vested or substantive rights. If so, even the legislature's clear statement of its intention would not trump constitutional guarantees of due process. If retroactive application affected vested or substantive rights, it would not be permitted, period.

In our view, the 2003 legislature's inclusion of the "as originally enacted" language in the amendments to K.S.A. 2002 Supp. 59-29a01 constitutes a clear statement not only that legislators wanted the amendments to be seen as clarifying but that they intended them to be applied retroactively. In short, legislators and their constituents saw men eligible for adjudication as sexually violent predators who were able to escape indefinite civil commitment because the State was slow to get to trial or, worse, merely neglected to move for a formal continuance. They did not like these results, and they did what they could to ensure that such results stopped.

*Owen Lumber* therefore demands that we move to the question of whether retroactive application would affect the appellants' vested or substantive rights and thus violate due process.

Our Supreme Court enumerated three factors to be considered in identifying the sometimes hazy line between vested and non-vested rights. *Owen Lumber* involved amendments to mechanics' lien statutes. The amendments added notice requirements for holders of equitable interests in property. In determining whether the amendments could be applied retroactively without running afoul of due process, the Supreme Court looked to: (1) the nature of the rights at stake, *i.e.*, whether those rights were procedural, substantive, or remedial; (2) how the rights would be affected, *i.e.*, whether the rights would be partially or completely abolished or whether there would be any substitute remedy provided; and (3) "the nature and strength of the public interest furthered by the legislation." 276 Kan. at 225.

The Supreme Court concluded that retroactive application of the mechanics' lien notice provisions would be unconstitutional. Contractors would lose otherwise valid liens unless they were given a reasonable time to comply with the statutory amendments. 276 Kan. at 227-28.

Moving to an application of the factors in this case, we note initially that, on the one hand, *Searcy* compared the 60-day time limit to a civil statute of limitations or a criminal speedy trial provision. 274 Kan. at 142. The United States Supreme Court has ruled that Kansas' SVPA contemplates a civil, rather than a criminal, proceeding. See *Kansas v. Hendricks*, 521 U.S. 346, 372-73, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997) (involuntary confinement pursuant to SVPA not criminal, punitive; no double jeopardy, ex post facto violation; neither statutory nor constitutional speedy trial guarantees in issue). Assuming therefore that we are operating in the civil realm, we note that a statute of limitations may be waived by a party or lost as a defense if not timely raised. In addition, our Supreme Court has held that a party has no vested right in a particular statute of limitations and that retroactive amendment to a statute extinguishing a right to prosecute an accrued cause of action does not implicate due process. See *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668-69, 831 P.2d 958 (1992).

More important, because it is more analogous to this case, the United States Supreme Court has held the converse to be true as

well: Retroactive changes *extending* statutes of limitation do not violate defendants' constitutional rights. See *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 311-14, 89 L. Ed. 1628, 65 S. Ct. 1137 (1945) (state legislature's retroactive change to statute of limitations lifting bar of prior statute not deprivation of defendant's property without due process); *Campbell v. Holt*, 115 U.S. 620, 628, 29 L. Ed. 483, 6 S. Ct. 209 (1885) (law eliminating statue of limitations defense after perfection constitutional); but see *Chenault v. United States Postal Service*, 37 F.3d 535, 539 (9th Cir. 1994) (newly enacted statute not applied retroactively to revive plaintiff's claim; to do so would alter substantive rights of defendant, increase liability). These decisions paint the rights at stake in this case as more procedural than substantive, more nonvested than vested.

The fact that, even under *Searcy*, SVPA trials may be continued beyond the 60 days on a formal motion also weighs in favor of treating the time limit as creating merely procedural and not substantive or vested rights. See *Searcy*, 274 Kan. at 144.

On the other hand, *Searcy* also stated that the 60-day time limit was "jurisdictional, mandatory, and a statutory right granted to respondents." 274 Kan. at 144. In effect, the *Searcy* opinion treated the time limit more like a substantive statute of repose. See *Harding*, 250 Kan. at 663, 670 (implying amendment to statute of repose could not apply retroactively; however, amendments in question dealt only with statute of limitations).

Regarding the second of the three *Owen Lumber* factors, it is clear the 2003 amendments would effectively deprive at least some of the appellants of a complete defense to the State's effort to commit them involuntarily for an indefinite period. The "jurisdictional" label placed on the 60-day time limit by *Brown, Blackmore*, and *Searcy* had given those whose trials were not formally continued within the 60-day period a complete defense.

The final *Owen Lumber* factor, the interest of the public furthered by the legislation, weighs heavily in favor of the State's position here. The public has an enormous interest in seeing that persons who qualify as sexually violent predators are removed from society and treated in appropriate facilities. Both the appellants

and the public have an interest in prompt and orderly proceedings to determine sexually violent predator status. In our view, retroactive application of the 2003 amendments protects the first interest without doing significant harm to the second.

This analysis of the *Owen Lumber* factors leads us to conclude that the balance tips in favor of retroactive application of the 2003 amendments. Even if we begin with the customary presumption of no retroactive application, the legislature has expressed its clear view to the contrary, and we detect no due process violation. In the peculiar context at hand, this conclusion also has the virtue of working a practical correction in the direction of the law set by *Brown, Blackmore*, and *Searcy*. This is a correction we believe our Supreme Court would endorse if given the opportunity to do so.

Our conclusion also requires us to affirm each of the appellants' cases. Because the 60-day time limit of K.S.A. 2002 Supp. 59-29a06 is directory and not mandatory, the failure to bring each appellant to trial within 60 days of the determination of probable cause did not divest the district court of subject matter jurisdiction in any properly commenced proceeding. The appellants were not entitled to relief from their commitment orders. Their challenges based on the 60-day time limit were purely procedural and thus came too late.

Affirmed.