NOT DESIGNATED FOR PUBLICATION

No. 114,495

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
DAVID G. DELIMONT.

MEMORANDUM OPINION

Appeal from Morris District Court; STEVEN L. HORNBAKER, judge. Opinion filed June 17, 2016. Affirmed.

*Angela M. Davidson*, of Wyatt & Davidson, LLC, of Salina, for appellant.

*Dwight R. Carswell*, assistant solicitor general, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*:  Based on his history of sexual offenses against children, his diagnosis of pedophilia, and his likelihood of reoffending, the district court determined that David G. Delimont was a sexually violent predator (SVP) under the Kansas Sexually Violent Predator Act (KSVPA). Accordingly, the district court committed him to the custody of the Secretary of the Department of Aging and Disability Services (Secretary). Delimont appeals, raising issues of jurisdiction, due process, and the sufficiency of the evidence.  Because we find that the district court clearly had jurisdiction over this matter, Delimont is prohibited from raising his constitutional due process claim for the first time on appeal, and there was sufficient evidence to support the district court's finding that Delimont is a SVP, we affirm the decision of the district court.

1

## FACTUAL AND PROCEDURAL HISTORY

In 1995, Delimont was convicted of four sexually violent offenses, all against underage boys in his community. Shortly before his release from prison in 2014, the State filed a petition that alleged that Delimont was a SVP. Given Delimont's convictions, his pedophilia and child sexual abuse diagnoses, and his likelihood of reoffending, the State requested that Delimont be involuntarily committed to treatment at Larned.

The clinical report attached to the State's request outlined Delimont's convictions, which arose after he sexually assaulted a number of boys between ages 8 and 15, including his nephew and step-nephew. He pled no contest to the charges; and during his interview with psychologist, Dr. Carol Crane, he admitted to multiple sexual encounters with his victims. Moreover, the report discussed Delimont's admitted sexual assault of his son in 1987, an offense that resulted in court marital and 5 years in the United States Disciplinary Barracks. Delimont acknowledged touching his son sexually "'a couple of times.'" Additionally, the report noted that Delimont received three prison disciplinary reports for lewd acts with "male inmates who were young (under age 25) and under 140 pounds." Based on this information, Crane concluded that Delimont suffered from pedophilia and child sexual abuse. However, depending on the evaluation metric, Delimont rated only a low or low-moderate risk of reoffending.

The district court found probable cause to believe that Delimont was a SVP. At the close of the probable cause hearing, Delimont explained that he wanted to obtain an independent evaluation. However, the State's initial evaluation would take approximately 60 days to complete. For that reason, Delimont agreed to waive the requirement that his trial occur within 60 days of the probable cause hearing. After questioning Delimont, the district court found that the waiver was "knowing, intelligent, and voluntary."

A few months later, Delimont again asked to waive the time limit. After discussing the issue with Delimont, the district court again determined that he entered "a free, knowing, intelligent waiver." The next month, Delimont waived the time limit a third time, and the district court scheduled a jury trial.

Before the trial date, however, Delimont waived his right to a jury trial and agreed instead to a bench trial on stipulated facts. As evidence, the State submitted Crane's report as well as an evaluation by Dr. Rebecca Farr and documents concerning Delimont's behavior while in jail and at Larned. In his defense, Delimont submitted an independent evaluation by Dr. Robert Barnett.

Farr's report echoed many of Crane's observations and conclusions. For instance, Delimont again admitted to assaulting his young victims, his son included. He also acknowledged the lewd acts incidents during his imprisonment, although he claimed only one incident was actually sexual. Depending on the evaluation method used, Farr's testing revealed a low-moderate to moderate risk for reoffending. But during the evaluation process, Delimont frequently refused to answer Farr's questions, and he expressed some uncertainty over the long-term effects the assaults had on his victims. And while he expressed remorse, he also referred to the sexual encounters with his victims as "mutual."

Like Crane, Farr diagnosed Delimont with pedophilia and child sexual abuse. She also diagnosed him with borderline personality disorder. In her report, she specifically opined that Delimont "suffers from mental abnormalities" and was likely to reoffend. She explicitly expressed concern over Delimont's struggle to hold himself accountable, writing that he minimized his behaviors and generally lacked insight about his offenses. She believed that these issues, combined with his unrealistic future plans and lack of support system, increased his likelihood of reoffending.

In contrast, Barnett's report concluded that Delimont did not suffer from psychopathy or antisocial personality disorder, although he diagnosed Delimont with avoidant personality features and child sexual abuse. Unlike Farr and Crane, Barnett determined that Delimont was not presently suffering from any mental disease or defect. In fact, he specifically found that "the diagnosis of pedophilia is not consistent with Mr. Delimont's current functioning." He also believed Delimont "appears to present little or no danger to the community" with only a low risk of reoffending.

Based on the exhibits and stipulated facts, the district court determined Delimont to be a SVP and committed him to the custody of the Secretary. Delimont timely appealed.

ANALYSIS

*The district court had jurisdiction to commit Delimont.*

In his first argument on appeal, Delimont argues that the district court lacked jurisdiction to commit him into the Secretary's custody. Specifically, he contends that the time limits in K.S.A. 2014 Supp. 59-29a06(a) are mandatory and that the district court's failure to comply stripped it of jurisdiction over the proceedings. As always, jurisdiction is a question of law over which this court exercises unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

The statute at issue provides in relevant part:

"Within 60 days after the completion of [a probable cause hearing], the court shall conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced." K.S.A. 2014 Supp. 59-29a06(a).

4

But despite this language, another subsection of the same statute, K.S.A. 2014 Supp. 59-29a06(f), specifically provides: "The provisions of this section are *not jurisdictional*, and failure to comply with such provisions in no way prevents the attorney general from proceeding against a person otherwise subject to [the KSVPA]." (Emphasis added.) Another section of the KSVPA, K.S.A. 59-29a01, provides that "any time requirements . . . are intended to be *directory and not mandatory* and serve as guidelines." (Emphasis added.)

Clearly, this plain language cuts directly against Delimont's argument. And while Delimont cites to a few cases that firmly establish the statutory time limit as jurisdictional, all three of those cases predate the language discussed above—language that the legislature enacted as a response to those very decisions. See *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 358, 82 P.3d 861, *rev. denied* 278 Kan. 845 (2004). In other words, and as Delimont grudgingly acknowledges in a later section of his brief, the 60-day time limit in K.S.A. 2014 Supp. 59-29a06(a) is neither jurisdictional nor mandatory.

Even more strikingly, Delimont repeatedly waived this 60-day time limit before the district court. And two of those times, the district court questioned him directly, determining the waiver to be knowing, voluntary, and intelligent. On appeal, Delimont attempts to undermine this finding, claiming that the waiver was neither knowing nor voluntary. However, he never challenged his waiver before the district court.

As this court often repeats, issues not raised before the trial court cannot be raised on appeal for the first time. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). While certain exceptions to this rule exist, Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires that an appellant justify why an issue not raised below should be considered by this court. Failure to comply with the rule risks

5

this court deeming the issue improperly briefed, waived, and abandoned. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

Delimont provides no explanation as to why this court should consider this newly asserted challenge to the validity of his waiver. As such, we decline to consider the issue. Moreover, given that the time limit he waived is neither jurisdictional nor mandatory, the validity of his waiver is ultimately immaterial.

*This court will not consider constitutional grounds for reversal asserted for the first time on appeal.*

Still on the topic of time limits, Delimont also contends that the nonmandatory time limits in the KSVPA violate his due process rights. Delimont's argument appears to vacillate between an as-applied challenge and a facial challenge one, referring both to his particular case and more generally to the language of K.S.A. 59-29a01 and K.S.A. 2014 Supp. 59-29a06(f). In the end, however, the distinction is unimportant as Delimont never challenged the KSVPA's constitutionality below.

As a rule, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). And as with the challenge to the validity of his waiver, Delimont fails to explain why this court should consider this argument despite his failure to raise it below—an explanation required by Rule 6.02(a)(5). As such, this court deems the issue improperly briefed and declines to hear it. See *Godfrey*, 301 Kan. at 1044.

*The district court's SVP determination was supported by sufficient evidence.*

Finally, Delimont contends that there was insufficient evidence to support the district court's SVP determination. Specifically, Delimont claims that nothing in the

State's exhibits demonstrated that his mental health diagnoses constituted the statutorily required mental abnormality or personality disorder. In an evidentiary challenge such as this one, an appellate court must ask whether the evidence, when viewed in the light most favorable to the State, allows a reasonable factfinder to determine beyond a reasonable doubt that the individual in question is a SVP. *In re Care & Treatment of Williams*, 292 Kan. 96, Syl. ¶ 1, 253 P.3d 327 (2011). Under this standard of review, the appellate court cannot reweigh the evidence or reconsider credibility determinations. 292 Kan. 96, Syl. ¶ 2.

Under the KSVPA, the State must prove four elements to establish that an individual is a SVP:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." 292 Kan. 96, Syl. ¶ 3.

See K.S.A. 2014 Supp. 59-29a02(a).

In this context, a mental abnormality is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." K.S.A. 2014 Supp. 59-29a02(b).

Preliminarily, the State argues that Delimont cannot challenge the sufficiency of the evidence because he stipulated to all the facts underlying his SVP determination, mental abnormality included. And indeed, stipulation of facts signed by the parties includes the following:

"That Dr. Rebecca Farr and Dr. Carol Crane have concluded that the respondent *suffers from all of the following mental abnormalities or personality disorders* which make the respondent likely to engage in repeats act of sexual violence:  Pedophilia, Sexually Attracted to Males, Nonexclusive Type; Sexual Abuse of a Child; Borderline Personality Disorder, With Antisocial Features; Alcohol Dependence." (Emphasis added.)

As a general rule, parties are bound to their stipulated facts, and both trial and appellate courts must render judgment based on those facts. *Double M. Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 269, 202 P.3d 7 (2009). In a criminal context, a defendant who enters into a stipulation waives his right to contest the factual evidence contained within. *State v. Bogguess*, 293 Kan. 743, 745, 268 P.3d 481 (2012). Given that Delimont essentially agreed that his diagnoses constitute mental abnormalities, we reject his argument here that it does not.

But more to the point, Farr's report expressly provides the link that Delimont claims is lacking. After defining mental abnormality, Farr explained:  "Mr. Delimont . . . suffers from mental abnormalities. More specifically, Mr. Delimont is diagnosed with Pedophilia, Sexually attracted to Males, Nonexclusive Type, as well as Sexual Abuse of a Child, Borderline Personality Disorder, With Antisocial Features, and Alcohol Dependence." Continuing on, Farr expressed many concerns about Delimont's risk of reoffending, including referencing his diagnoses as "multiple mental abnormalities and characterological deficits . . . which support Mr. Delimont's increased risk and propensity to engage in sexual offending behavior in the future." In her summary, Farr concluded that "the characterological deficits of Mr. Delimont indicate an individual who focuses more on his own personal needs suggesting he is unable to control his impulses for deviant sexual acts."

Clearly, then, Delimont's argument that nothing in the record links his diagnoses to the statutory definition of mental abnormality is disingenuous at best. While none of the references exactly mimic the statutory language, the report connects his diagnoses to the

statute in such a way that a rational factfinder could determine beyond a reasonable doubt that he suffered from a mental abnormality.

Accordingly, the district court's decision is affirmed.