FILED
United States Court of Appeals
Tenth Circuit

**July 1, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RURAL WATER DISTRICT NO. 4,
DOUGLAS COUNTY, KANSAS,

  Plaintiff-Appellant,

v.

No. 12-3197

CITY OF EUDORA, KANSAS,

  Defendant-Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 2:07-CV-02463-JAR)**

Steven M. Harris, Doyle Harris Davis & Haughey, Tulsa, Oklahoma (Michael D. Davis, Doyle Harris Davis & Haughey, Tulsa, Oklahoma, and John W. Nitcher, Riling Burkhead & Nitcher, Lawrence, Kansas, with him on the briefs) for Appellant.

Curtis Tideman (David Frye and Jeffrey R. King with him on the brief), Lathrop & Gage LLP, Overland Park, Kansas, for Appellee.

Before **TYMKOVICH**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

**TYMKOVICH**, Circuit Judge.

This is the second appeal in a dispute involving Rural Water District No. 4 in Douglas County, Kansas and the City of Eudora, Kansas. The water district, Douglas-4, neighbors Eudora and contends Eudora is trying to poach Douglas-4's customers. Douglas-4 is currently indebted on a USDA-guaranteed loan, so Eudora's actions potentially violate a federal law which prohibits municipalities from poaching rural water districts' customers while a USDA-guaranteed loan is in repayment. Douglas-4 therefore sued Eudora under 42 U.S.C. § 1983, claiming Eudora violated Douglas-4's federal statutory right to be free from poaching. The case went to trial resulting in a jury verdict and damages for Douglas-4.

On appeal, we vacated the verdict. *Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969 (10th Cir. 2011) (*Eudora I*). The appeal turned on a Kansas statute that prevents rural water districts from obtaining USDA loan guarantees unless those guarantees are "necessary." Absent a showing the loan was necessary, Douglas-4 could not claim the anti-poaching protections granted by federal law. We held the jury was improperly instructed on the meaning of "necessary" and remanded for a new trial.

Soon after our decision, the Kansas legislature amended the relevant Kansas statute and removed the "necessary" requirement. The district court, considering cross-motions for summary judgment on remand, ruled that the amendment does not apply retroactively. The district court also denied summary judgment for both parties. The district court then certified the retroactivity

-2-

question to us, which we accepted.  Douglas-4, however, asks us to reach two additional issues, both of which come down to whether it deserves summary judgment on this record.  If we agree to expand the scope of the appeal as Douglas-4 suggests, Eudora asks us to consider whether it, rather than Douglas-4, deserves summary judgment.

Exercising jurisdiction under 28 U.S.C. § 1292(b), we uphold the district court's conclusion that the amended Kansas statute does not apply retroactively.  The "necessary" requirement therefore still binds Douglas-4.  We also agree to take up the parties' arguments about the propriety of summary judgment.  In that regard, we hold Douglas-4 fails the "necessary" requirement as a matter of law, entitling Eudora to summary judgment.

# I.  Background

## A.  The Johnson-6 Project

Douglas-4 is a rural water district organized under Kansas's Rural Water Districts Act.  Sometime before 2002, Douglas-4 was running low on water and looking to buy from an adjoining rural water district known as "Johnson-6."  But getting water from Johnson-6 would require Douglas-4 to lay new pipes and build a new pumping station.  The estimated cost for such improvements was $1.25 million.  Douglas-4 received initial approval of a loan for the entire $1.25 million from the Kansas Department of Health and Environment (KDHE) at a 4.08% fixed interest rate for twenty years.

### B. The Choice to Pursue a USDA Guarantee

Eudora is a Kansas municipality whose boundaries run up against Douglas-4's service area. In 2002, Eudora annexed a part of Douglas-4's service area. Douglas-4 saw Eudora's actions as a threat to its customer base.

In May 2003, Douglas-4's administrator, Scott Schultz, wrote a memo to Douglas-4's governing board proposing a new financing arrangement for the Johnson-6 project. Instead of borrowing $1.25 million from the KDHE, Schultz proposed borrowing $1 million from the KDHE and $250,000 through a private loan guaranteed by the USDA's Rural Development agency. Schultz argued the private, USDA-guaranteed loan was advantageous because federal law prohibits municipalities from poaching a rural water district's customer base while a USDA-guaranteed loan remains in repayment:

> The service provided or made available through any
> [rural water district with a USDA-backed loan] shall not
> be curtailed or limited by inclusion of the area served by
> such [district] within the boundaries of any municipal
> corporation or other public body . . . during the term of
> such loan . . . .

7 U.S.C. § 1926(b). This restriction helps rural water districts to maintain a revenue stream through which to pay back their loans. *See Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1196 (10th Cir. 1999).

Schultz's memo (which he affirmed in deposition and trial testimony) states that the USDA-backed loan would have a higher interest rate than the already-

approved KDHE loan and would cost $5,000 to $10,000 more in closing and professional fees. "Really, the only motivation for this loan," he said, "is the potential for annexation protection." Aple. Addendum at 49. Schultz also told the board, "[W]e are going to proceed with the project regardless of the financing issues—if an obstacle surfaces on getting the [federal loan guarantee], we will simply take the entire loan from KDHE as originally planned." *Id*. at 51.

Based on Schultz's recommendation, the board approved a plan to finance $1 million through the KDHE and $250,000 through a private bank loan with a USDA guarantee. Douglas-4 eventually got both loans and the guarantee. When Eudora nonetheless threatened to poach Douglas-4's customer base in the annexed area, Douglas-4 filed a § 1983 complaint, alleging violation of 7 U.S.C. § 1926(b).

### C. The Litigation Before the First Appeal

In prior cases involving rural water districts, we have held that such districts do not enjoy § 1926(b) protection unless state law authorizes the water district to incur federal obligations. *See, e.g.*, *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 717–19 (10th Cir. 2004). Much of the litigation between Douglas-4 and Eudora therefore revolved around whether Kansas law permits rural water districts to take out federal loans, or guarantees, or both.

The question at trial, as framed by the district court, was whether the USDA-guaranteed private loan was "necessary" as required by a Kansas statute that gives rural water districts power to "cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative *necessary* to carry out the purposes of its organization." K.S.A. § 82a-619(g) (emphasis added). If the loan was not "necessary to carry out the purposes of its organization," then Douglas-4 would not merit § 1926(b) protection.

Eudora objected, arguing that the necessity of the loan (*i.e.*, to build the Johnson-6 project) was never at issue, just the necessity of the federal guarantee on that loan. The district court overruled the objection, stating that the loan and the guarantee were "one and the same" for purposes of this case.

The district court therefore instructed the jury to consider whether the loan guaranteed by the USDA was necessary, not whether the guarantee itself was necessary. The jury found the loan necessary (presumably to fund the Johnson-6 project) and gave a verdict in favor of Douglas-4.

### D. *The First Appeal*

On appeal, Eudora again argued that the district court erred by not separating the necessity of the loan from the guarantee. We agreed with Eudora on this question, holding that the necessity of the guarantee, not the loan, was the salient question. *Eudora I*, 659 F.3d at 977.

We also addressed a cross-appeal argument from Douglas-4 regarding K.S.A. § 82a-619(g), the subsection creating the "necessary" requirement. That subsection actually contains two clauses, one containing the "necessary" requirement and another which has no such requirement. At that time, the entire subsection provided as follows:

> Every district incorporated under this act . . . shall have the power to * * * cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative necessary to carry out the purposes of its organization; *and to accept financial or other aid* which the secretary of the United States department of agriculture is empowered to give pursuant to 16 U.S.C., secs. 590r, 590s, 590x-1, 590x-a and 590x-3, and amendments thereto . . . .

K.S.A. § 82a-619(g) (1997 & Supp. 2002) (emphasis added). Douglas-4 claimed that the "accept financial or other aid" clause, which contains no "necessary" requirement, gave it authority to obtain a USDA guarantee and its attendant § 1926(b) protection without making a necessity showing.

We rejected that argument because the cross-referenced federal statutes—"16 U.S.C., secs. 590r, 590s, 590x-1, 590x-a and 590x-3"—had been repealed in 1961. Moreover, they had been replaced with what we characterized as a "radically different statutory scheme" with different numbering, so "amendments thereto" could not plausibly encompass the new federal regime. *Eudora I*, 659 F.3d at 977 n.5.

After resolving various other issues not relevant here, we remanded "for a new trial for the limited purpose of determining whether Douglas-4's cooperation to secure the federal guarantee was necessary for the purposes of its organization." *Id*. at 980.

## E. Developments on Remand

Our discussion in *Eudora I* of § 82a-619(g)'s "accept financial or other aid" clause apparently prompted the Kansas legislature to propose a statutory amendment:

> The supplemental note [to the bill proposing the amendment] indicates that [a representative from the] Kansas Rural Water Association[] spoke in favor of the amendment, noting that the federal code had changed and been put into another statute, that "an alert Attorney General caught the change in the federal law," and the amendment "just puts back into place the authority to issue and refinance the bonds."

App. 1305 (quoting http://www.kslegislature.org/li_2012/b2011_12/committees/ resources/ctte_h_engy_utls_1_20120208_min.pdf). Subsection (g) was therefore amended, effective July 1, 2012, as follows (strikeouts indicate deletions; underscoring indicates insertions):

> Every district incorporated under this act . . . shall have the power to * * * cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative necessary to carry out the purposes of its organization; and to accept financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant

-8-

to ~~16 U.S.C.A., secs. 590r, 590s, 590x-1, 590x-a and 590x-3, and amendments thereto~~ 7 U.S.C. § 1921 et seq., as in effect on the effective date of this act . . . .

The citation to "§ 1921 et seq." includes § 1926(b). *See* Consolidated Farmers Home Administration Act, Pub. L. No. 87-128, Tit. III, § 306(b), 75 Stat. 307, 308 (1961).

At the time of the amendment, the district court had been considering new cross-motions for summary judgment on the "necessary" question. Douglas-4 then raised the possibility that the amended version of § 82a-619(g)'s "accept financial or other aid" clause might moot the "necessary" question and give Douglas-4 the power, as a matter of law, to enter into the loan guarantee.

The district court rejected Douglas-4's argument, holding that the amendment does not apply retroactively to this dispute. The district court nonetheless certified to us this question: "whether the recent amendment to K.S.A. § 82a-619(g) is retroactive and, if so, whether Douglas-4 was empowered to accept financial or other aid from the USDA in the form of a guarantee, without the requirement of necessity." App. 1312. We agreed to hear the appeal.

## II. Analysis

### A. *Retroactivity of 2012 Amendment to K.S.A. § 82a-619(g)*

As we explained in *Eudora I*, a rural water district may only obtain § 1926(b) protection if state law authorizes it to do so. This requirement accommodates federalism concerns. If a rural water district could obtain

-9-

§ 1926(b) protection without state authorization, it might unduly upset the states'

interests in maintaining control of quintessentially local activities such as land

development and zoning—both of which almost always involve questions of water

supply. No matter what the state or its municipalities deem best for the

advancement of the community, a rural water district with § 1926(b) protection

may effectively veto any plan that would diminish its customer base. Thus, we

require states to authorize their rural water districts to seek § 1926(b) protection

(with whatever conditions the state may impose) so that the state itself maintains

ultimate control over the circumstances in which a water district may call down

federal protection and potentially frustrate future zoning, development, or

annexation plans. *See Eudora I*, 659 F.3d at 976.

As previously noted, the Kansas statute under which Douglas-4 claims its

authority is § 82a-619(g), which we will refer to as "subsection (g)" for

simplicity. As also noted, subsection (g) has two clauses. At the time this

dispute arose (and at the time we issued *Eudora I*), the first clause gave Douglas-

4 power to "cooperate with and enter into agreements with the secretary of the

United States department of agriculture or the secretary's duly authorized

representative necessary to carry out the purposes of its organization," and the

second clause granted Douglas-4 power "to accept financial or other aid which the

secretary of the United States department of agriculture is empowered to give

pursuant to 16 U.S.C.A., secs. 590r, 590s, 590x-1, 590x-a and 590x-3, and amendments thereto." K.S.A. § 82a-619(g) (1997 & Supp. 2002).

Before the first appeal, Eudora primarily argued that Douglas-4 did not satisfy the "necessary" condition imposed by the first clause and therefore deserved no § 1926(b) protection. Douglas-4 disputed that, but also argued in the alternative that the second clause gave it authority to obtain the USDA guarantee with no need to prove necessity. The district court rejected this argument and we affirmed that decision in *Eudora I*.

The Kansas legislature has now amended the second clause, striking out the cross-reference to the repealed federal statutes and replacing it with a cross-reference to "7 U.S.C. § 1921 et seq., as in effect on the effective date of this act." The "et seq." brings § 1926(b) within the second clause's ambit, thus suggesting that water districts may seek § 1926(b) protection without making any showing of necessity. If so, and if the amendment applies retroactively, this case's focus on necessity becomes moot.

Whether the amendment to subsection (g) applies retroactively is a matter of Kansas law. We review a district court's interpretation of state law de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991). As the district court did, we must look to Kansas courts' retroactivity principles for resolving this question. *Burleson v. Saffle*, 278 F.3d 1136, 1140 (10th Cir. 2002) ("whether or not a new rule of state law may be applied retroactively is a pure state law question").

-11-

In Kansas, "[t]he fundamental rule is that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively." *State v. Williams*, 244 P.3d 667, 670 (Kan. 2010) (citation omitted). The amended version of subsection (g) does not "clearly indicate[]" that it should operate retroactively.

But there is an exception to the "clearly indicates" rule, namely: "if the statutory change [1] does not prejudicially affect the substantive rights of the parties and [2] is merely procedural or remedial in nature, it applies retroactively." *Williams*, 244 P.3d at 670. A law affects "substantive rights" if it "establish[es] the rights and duties of parties." *State of Kansas/State of Iowa ex rel. Sec'y of Soc. & Rehab. Servs. v. Bohrer*, 189 P.3d 1157, 1162 (Kan. 2008). By contrast, a law is "merely procedural" if it "deal[s] with the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights." *Denning v. Johnson Cnty., Sheriff's Civil Serv. Bd.*, 266 P.3d 557, 572 (Kan. Ct. App. 2011).

Under these principles, the amendment to subsection (g) is a substantive amendment. Before the amendment, a municipality could annex a rural water district's territory and take the district's customers despite a USDA-backed loan if the municipality was willing to prove that the loan was not necessary to the district's purposes. In other words, Eudora had a right to take Douglas-4's customers if Douglas-4's USDA-backed loans were unnecessary. Retroactively

applying subsection (g), as amended, would strip Eudora of that right. That is not simply an amendment to "the manner and order of conducting suits." *Denning*, 266 P.3d at 572. Thus, it appears to be a substantive amendment.

Douglas-4 counters that the amendment was remedial or clarifying. No party has directed us to a Kansas state-law definition of "remedial" in this context. Douglas-4 apparently believes it means "to remedy a mistake or ambiguity in the text," which is really another way of saying "clarifying." Douglas-4 further believes the Kansas legislature simply clarified that "16 U.S.C.A., secs. 590r, 590s, 590x-1, 590x-a and 590x-3, and amendments thereto" was always meant to refer to "7 U.S.C. § 1921 et seq."

The legislative history cited by the district court admittedly provides some loose support for this idea. *See* App. 1305 (noting the Kansas legislative report stating that the amendment "just puts back into place the authority to issue and refinance the bonds"). The Kansas Supreme Court, however, has never endorsed a "clarifying" exception to the rule against retroactivity. The first instance we can locate of a clarifying exception in Kansas law is a Kansas Court of Appeals decision from 2004 which explored the possibility of a clarifying exception solely through citations to federal cases. *In re Hunt*, 82 P.3d 861, 871 (Kan Ct. App. 2004). Among other examples, the Kansas court cited one of our cases interpreting Oklahoma law for the proposition that "a clarifying amendment that

explained an ambiguous statute to more clearly express legislative intent would be given retroactive application if it did not impair vested rights." *Id*.

Ultimately, the Kansas Court of Appeals in *Hunt* did not explicitly adopt a clarifying exception, but instead concluded that the amendments at issue "constitute[d] a clear statement not only that legislators wanted the amendments to be seen as clarifying but that they intended them to be applied retroactively." *Id*. at 872.  Of course, if the legislature made a clear statement of intent to apply the amendments retroactively, then there is no need for a clarifying exception— because the exceptions apply only when the legislature has made no "clear statement."

Nonetheless, subsequent Kansas Court of Appeals decisions have read *Hunt* as establishing a clarifying exception.  *See, e.g.*, *State v. Montgomery*, 120 P.3d 1151, 1154 (Kan. Ct. App. 2005).  The Kansas Supreme Court also noted in passing that *Hunt* discusses a clarifying exception but it did not endorse (or impugn) the analysis.  *Brennan v. Kan. Ins. Guar. Ass'n*, 264 P.3d 102, 112–13 (Kan. 2011).

Even assuming a clarifying exception exists, we can confidently predict that the Kansas courts would apply it only if the clarification "did not impair vested rights," as *Hunt* suggested.  82 P.3d at 871.  This is evident from how the Kansas-endorsed exception analysis is phrased: "if the statutory change [1] does not prejudicially affect the substantive rights of the parties *and* [2] is merely

-14-

procedural or remedial in nature, it applies retroactively." *Williams*, 244 P.3d at 670 (emphasis added). Assuming we insert "or clarifying" after "merely procedural or remedial," we are still left with a conjunctive test. Thus, even if clarifying, an amendment may not apply retroactively if it would "prejudicially affect the substantive rights of the parties."

Here, as already noted, retroactively applying the subsection (g) amendment would strip Eudora of its only defense to this lawsuit. Accordingly, we agree with the district court that subsection (g), as amended, is "substantive" and not retroactive. Douglas-4 therefore remains constrained by the requirement that the USDA guarantee be "necessary to carry out the purposes of its organization."[1]

## B. Propriety of Summary Judgment

### 1. Whether We May Consider Douglas-4's Proposed Summary Judgment Issues

In the same order in which the district court certified the retroactivity question, it also refused to grant summary judgment for either side. Having ruled that Douglas-4 must satisfy the "necessary" requirement regardless of the amendment, the district court went on to evaluate the parties' claims in that

---

[1] The district court alternatively held that even if the amended subsection (g) applies retroactively, it would not relieve Douglas-4 from satisfying the "necessary" requirement. Given our conclusion that amended subsection (g) does not apply retroactively, we need not reach this alternative reasoning.

regard and concluded that genuine issues of material fact precluded summary judgment.

The district court did not certify that question to us—*i.e.*, whether a genuine material factual dispute precludes summary judgment. It only certified whether retroactive application of the amended subsection (g) has any effect on the current dispute. Douglas-4's opening brief nonetheless attempts to expand the issues on appeal to include:

> 1.    Is the issue of whether the Bank Loan was "necessary" barred by the law of the case, and/or beyond the scope of the remand?
>
> 2.    Did the District Court commit error by denying Douglas-4's summary judgment motion because the undisputed evidence discloses that the Guarantee was necessary ("absolutely necessary" as defined by this Court in [*Eudora I*]) to obtain the Bank Loan?

Aplt. Br. at 2.

Whether we may take up Douglas-4's proposed extra issues depends on the statute giving us jurisdiction here, 28 U.S.C. § 1292. In pertinent part, it reads:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

-16-

28 U.S.C. § 1292(b). Facing an issue similar to ours (an interlocutory appeal ranging beyond the district court's certified question), the Supreme Court expounded on § 1292(b) and concluded that courts of appeal are not limited to the certified question:

> As the text of § 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court. The court of appeals may not reach beyond the certified order to address other orders made in the case. But the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court.

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (internal quotation marks and citations omitted; emphasis in original); *see also Pelt v. Utah*, 539 F.3d 1271, 1283 n.6 (10th Cir. 2008) (applying *Yamaha Motor* to reach an "issue [that] was 'fairly included' in the [certified] order," even though the certified question did not encompass that issue); 16 Charles Alan Wright et al., Fed. Prac. & Proc. § 3929 (2d ed., April 2013 update) ("The court may . . . consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court.").

Although the Supreme Court did not emphasize it, presumably an additional requirement (drawn from § 1292(b)'s text) also applies, *i.e.*, that the issue must comprise "a controlling question of law." Thus, if an issue is "fairly included

-17-

within the certified order" and is "a controlling question of law," then we have discretion to take it up on appeal. Here, the summary judgment denial was a part of the district court's retroactivity order.

Having reviewed the parties' positions at summary judgment, we believe that no re-trial is necessary. In the interest of judicial economy, we therefore exercise our discretion to address Douglas-4's proposed additional issues. We condense and reformulate those issues into the following inquiry: Did the district court err in determining that a genuine issue of material fact precluded summary judgment? We review that question de novo. *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1041–42 (10th Cir. 2012).

### *2. "Necessary" Generally*

As already noted at length, this case turns on whether Douglas-4's USDA guarantee was "necessary to carry out the purposes of its organization." K.S.A. § 82a-619(g). In *Eudora I*, we discussed what sorts of needs would suffice to show that Douglas-4's USDA guarantee is "necessary."

First, in general terms, we distinguished the need for a loan from the need for a guarantee:

> Generally, a loan functions as a source of funds, whereas a guarantee serves to bolster an organization's existing credit.

> Although each has its own purpose and must be analyzed independently, without a loan there is nothing to guarantee. Thus, for a guarantee to be necessary the

underlying loan must also be necessary. The converse, however, is not always true: not every loan gives rise to a guarantee. Therefore, even if the parties would agree that the loan was necessary to carry out the purposes of Douglas-4's organization, Douglas-4 must still prove that its *cooperation with the USDA*—i.e., the guarantee—was also necessary.

659 F.3d at 977–78 (emphasis in original; citations omitted).

Second, we concluded that

Douglas-4's decision to seek out a federal guarantee must . . . be justified by more than the incidental monopoly protections afforded by § 1926(b); the guarantee must further at least one of the District's purposes as a rural water service provider as provided in its charter, bylaws, or enacting statutes. Protection from competition does not suffice. Nor can Douglas-4 justify its cooperation by appealing to the abstract goals of maintaining its corporate existence, profits, or integrity without some direct association to an enumerated purpose under its charter, bylaws, or relevant statutes.

*Id*. at 980.

### 3. Douglas-4's "Absolutely Necessary" Theory

The foregoing restrictions on the meaning of "necessary" present a problem for Douglas-4. Douglas-4's administrator, Scott Schultz, told Douglas-4's board members that the USDA-backed loan would have a higher interest rate than the already-approved KDHE loan and would cost $5,000 to $10,000 more in closing and professional fees. "Really, the only motivation for this loan," he said, "is the potential for annexation protection." Aple. Addendum at 49. This seems to run afoul of our requirement that "Douglas-4's decision to seek out a federal

-19-

guarantee must . . . be justified by more than the incidental monopoly protections afforded by § 1926(b)." *Eudora I*, 659 F.3d at 980.

But Douglas-4 sees something of a lifeline in subsequent language from *Eudora I*, where we clarified that necessity does not imply absolute need: "This does not mean that Douglas-4's cooperation with the USDA must be 'absolutely necessary,' i.e., that it could not receive financing without the guarantee. Nor must Douglas-4 prove that a guarantee was the only or even the cheapest course of action available." *Id*. Douglas-4 therefore argues as follows in support of summary judgment in its favor:

First, according to *Eudora I*, a water district need not prove "absolute necessity"—but it stands to reason that it is a home run for the water district if it *can* prove "absolute necessity." Second, according to *Eudora I*, the "necessary" requirement is an inquiry directed at the guarantee, not the loan—and no party disputes that Douglas-4 needed a loan to borrow money to build the Johnson-6 project. Third, Douglas-4 submitted uncontradicted testimony from a bank officer that the bank would never have made the $250,000 loan but for the USDA guarantee. Therefore, according to Douglas-4, the USDA guarantee was "absolutely necessary" to obtaining the loan.

The problem with Douglas-4's argument is that it would obviate the "necessary" inquiry because no water district with a USDA guarantee could ever fail this test. Before the USDA will agree to guarantee a loan, the lender must

certify that it "would not make the loan without [the] guarantee." 7 C.F.R. § 1779.63(a)(13). Under Douglas-4's theory, then, every USDA-guaranteed loan is "absolutely necessary." We cannot accept a construction that makes all USDA guarantees "absolutely necessary" as a matter of Kansas law.

### 4. Applying the Appropriate Standard

Douglas-4 also erroneously interprets our distinction in *Eudora I* between the loan and the guarantee. Although no party disputes that the Johnson-6 project was necessary in a larger sense, nor that *some* loan was necessary to build the Johnson-6 project, we cannot divorce the guarantee's purpose from the loan's purpose. If Douglas-4 could not have received *any* loan for the Johnson-6 project without the guarantee, or could not have borrowed the needed amount without it, then the guarantee would be absolutely necessary because the loan depends on the guarantee, the project depends on the loan, and Douglas-4's continuing viability depends on the project. We presume that would satisfy § 1926(b).

But if the guarantee was not absolutely necessary in this sense, the guarantee must have a "direct association to an enumerated purpose under its charter, bylaws, or relevant statutes." *Eudora I*, 659 F.3d at 980. A "direct association" means the guarantee would further at least one of the water district's enumerated purposes even if the guarantee did not provide § 1926(b) protection.

If a direct association exists, the final question is whether the USDA guarantee is ultimately "necessary." To sustain a finding that the guarantee was

-21-

necessary, the water district would need to demonstrate that the guarantee made the loan qualitatively better than other reasonably available loans. The guaranteed loan need not present literally "the cheapest course of action available." *Eudora I*, 659 F.3d at 980. But interest rates, closing fees, professional fees, and so forth are highly probative of the quality of the loan as compared to other loans, as are less quantifiable terms (*e.g.*, collateral requirements, the length of the repayment period, and so forth). The water district's own views, if any, on the quality of various loans in comparison to each other would certainly be relevant.

Under this standard, Douglas-4 fails both the "absolutely necessary" and "necessary" inquiries. As to "absolutely necessary," the evidence shows that Douglas-4 could have obtained the KDHE loan for the entire $1.25 million. Thus, the USDA-guaranteed private loan was not absolutely necessary.

As to "necessary," Douglas-4 fails both the direct association element and the necessary inquiry itself. Douglas-4 offers numerous arguably direct associations, such as "prevent[ing] the city from cherry picking Douglas-4's customers which would result in higher rates and charges to remaining customers" and "prevent[ing] the city from annexing areas causing Douglas-4 to have one or more dead-end lines serving customers, requiring more flushing, and more wasted water." Aplt. Br. at 47, 53 (capitalization normalized). But all of these outcomes

depend on § 1926(b) protection, not on the guarantee. They do not stand independent of § 1926(b). Accordingly, they are not direct associations.

As for "necessary," the undisputed evidence shows that the USDA-guaranteed loan was not the qualitatively best loan available—save for § 1926(b) protection. Indeed, § 1926(b) protection was the sole reason Schultz recommended obtaining a USDA-guaranteed loan. Schultz further acknowledged that it would be cheaper to finance the entire project through a KDHE loan.

Given this evidence, no reasonable jury could find in favor of Douglas-4 on the "necessary" question. Eudora therefore deserves summary judgment.

## III. Conclusion

We AFFIRM the district court's conclusion that the 2012 amendment to K.S.A. § 82a-619(g) does not apply retroactively. We also AFFIRM the district court's denial of summary judgment to Douglas-4 but REVERSE the district court's denial of summary judgment to Eudora.

On remand, the district court should enter summary judgment in Eudora's favor on the question of whether Douglas-4's USDA guarantee was "necessary to carry out the purposes of its organization" and otherwise proceed in a manner consistent with this opinion.