IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,284

STEPHEN DOUGLAS WHITE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Legislature's amendments to K.S.A. 60-1507(f), L. 2016, ch. 58, § 2, do not apply retroactively to 60-1507 motions filed before July 1, 2016.

2.

If an untimely motion was filed under K.S.A. 60-1507 before July 1, 2016, and the movant asserts the court should apply the manifest injustice exception to the one-year limitation period imposed in K.S.A. 60-1507(f), the test set out in *Vontress v. State*, 299 Kan. 607, 325 P.3d 1114 (2014), governs the analysis of whether the exception applies.

3.

Under the circumstances of this case, the district court's findings of fact and conclusions of law are insufficient for appellate review of a decision that the manifest injustice exception in K.S.A. 60-1507(f) does not apply.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 10, 2016. Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed July 6, 2018. Judgment of the

1

Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, argued the cause and was on the brief for appellant.

*Joseph M. Penney*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Around one year after a statutory deadline, Stephen D. White filed a motion under K.S.A. 60-1507 (Furse 2005). In his motion, White asked the district court to apply the manifest injustice exception in 60-1507(f), which allows consideration of 60-1507 motions even if filed late. The district court rejected White's manifest injustice argument, and White appealed. While his appeal was pending, the Legislature amended 60-1507 and changed the manifest injustice factors. As a matter of first impression for this court, we hold the amendments do not apply retroactively, and the preamendment factors govern White's appeal. Although the district court applied the preamendment factors, we conclude the court's findings of fact are insufficient for appellate review. As a result, we remand this case to the district court.

FACTS AND PROCEDURAL HISTORY

White pleaded no contest to a charge of rape of a child under age 14. In exchange for his plea, the State dismissed two additional counts of the same charge. The State agreed to a departure sentence from a hard 25 life sentence to a sentence for a specified term of months, as defined in an agreed-upon sentencing guidelines grid box. The State's agreement was contingent on White presenting, and the court finding, substantial and

2

compelling reasons to depart. The State also agreed to remain silent if White sought an additional downward departure and to file an amended information to reflect the parties' agreement. The district court questioned White about the agreement and ultimately accepted his plea under the agreement.

At the later sentencing hearing, the district court heard arguments on White's departure motion. It found that White had failed to present substantial and compelling reasons for a departure. The district court then imposed a sentence of life imprisonment with a mandatory minimum imprisonment term of 25 years.

White filed an appeal in which the Appellate Defender's Office (ADO) represented him. The ADO filed a motion asking that the Court of Appeals consider his appeal without full briefing given the limited grounds for an appeal from a plea and statutorily authorized sentence. See Supreme Court Rule 7.041A (2018 Kan. S. Ct. R. 47). The Court of Appeals granted the request and summarily affirmed White's sentence in January 2013. The Clerk of the Appellate Court issued the mandate, which made White's judgment of conviction and sentence final on February 12, 2013.

White filed a pro se motion for relief under K.S.A. 60-1507 on April 10, 2015. A motion under K.S.A. 60-1507 must be filed within one year of specified events—here, within one year of the mandate. A court may extend that period to prevent manifest injustice. K.S.A. 60-1507(f). White conceded he failed to meet the one-year deadline but argued the court should find manifest injustice and extend the filing deadline. To support a finding of manifest injustice, White asserted he did not learn of the outcome of his direct appeal until about two years after the Court of Appeals' mandate. The district court appointed counsel for White and held a preliminary hearing to determine whether manifest injustice justified extending the deadline.

During the preliminary hearing, White's appointed counsel questioned White about his direct appeal. White testified about his limited contacts with the appellate defender who represented him. Specifically, White testified he received no correspondence from his appellate defender before January 2015, other than one communication. At trial he could not remember the substance of that communication, but in his pro se motion he stated he had received a letter from his appellate defender that enclosed a copy of the motion for summary disposition. In January 2015, White sent a letter to his appellate defender in which he asked about the status of his appeal.

The appellate defender sent a letter in response, which the court admitted into evidence at the preliminary hearing. In the letter, the appellate defender referenced an earlier letter mailed to White in January 2013. The appellate defender recapped the contents of the January 2013 letter. In that letter, the appellate defender had explained White lost before the Court of Appeals. The letter also stated the ADO would not file a petition seeking review by the Kansas Supreme Court unless it heard back from White.

The district court also admitted into evidence other letters between White and his appellate defender. In one letter, the appellate defender admitted he had failed to inform White when the Appellate Clerk issued the mandate in his direct appeal. The appellate defender also explained the ADO had closed White's file when it did not hear from him in response to the January 2013 letter. Thus, no petition for review of the Court of Appeals decision was filed. Because the ADO had failed to give White notice that the mandate had issued, his appellate defender offered to submit an affidavit to support White's late 60-1507 submission.

At the preliminary hearing, the district court also admitted the appellate defender's affidavit into evidence. In the affidavit the appellate defender stated his office had failed to notify White when the mandate issued. The appellate defender also said White wrote

4

to ask about the status of his appeal in early January 2015. The affidavit mentioned no January 2013 letter, and no one offered a copy of that letter as evidence.

White responded to questions from his habeas counsel at the preliminary hearing. He testified about waiting to receive the mandate and his plan to file a 60-1507 motion alleging ineffective assistance of counsel as soon as the mandate issued. He explained he had no knowledge of the appellate system and had been informed that the process moves slowly. At some point, someone suggested he write his appellate counsel to ask about his appeal. This prompted him to send the January 2015 letter. White's habeas counsel did not ask White any questions related to the merits of the issues raised in White's 60-1507 motion. Nor did habeas counsel ask about White's claims of innocence.

On cross-examination, White testified that he had not received the appellate defender's January 2013 letter. The State then asked White a question related to the merits of his 60-1507 motion. In particular, the State asked what White understood when he entered the plea about the possible sentence he faced. White's habeas counsel objected on relevance grounds. The State then cited *Vontress v. State*, 299 Kan. 607, 325 P.3d 1114 (2014), and its totality-of-the-circumstances test. The State noted the test set out three factors, one of which requires consideration of whether "the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration." 299 Kan. at 616. Given that factor, the State argued its questions would elicit relevant testimony about the merits of White's claims. The district court allowed the State to continue its merits-related questioning.

Once the attorneys finished with their questions, the district court questioned White. The court first asked White to list the prisons in which the Department of Corrections had housed him. The court then asked whether White had notified the ADO of his changes in location, and White testified he had. White also testified he received all

5

communications from his appellate defender except the January 2013 letter. In response to the court's questions, White testified he had access to the internet; typed his motion on a typewriter, not a word processor; and had the ability to communicate with his appellate defender as long as he had the funds to pay for the postage. The court then offered the State and habeas counsel another opportunity to question White. Both declined to do so.

Following the attorneys' arguments, the district court took a recess to review *Vontress*. When court resumed, the court ruled from the bench. The district court began by explaining that manifest injustice meant something shocking to the conscience or obviously unfair.

Addressing the first *Vontress* factor, the district court commented that White "now claims in rather self-serving fashion that he actually didn't receive that communication even though he apparently received other communications sent from the same appellate defender's office without a problem." The court then cited Kansas law indicating the adoption of the one-year limit for habeas actions put all persons on constructive notice of the new provision of law. The court found White had some responsibility for monitoring the progress of his litigation.

The court then considered the third *Vontress* factor, a claim of actual innocence. The court weighed the third factor against White based on its determination "that there's been no claim here of actual innocence, rather just procedural deficiencies are alleged."

Finally, the district court turned to the second *Vontress* factor, finding no merit to White's claimed errors after reviewing the transcript of the plea hearing. The court denied relief, having concluded all three factors weighed against White.

White appealed, and the Court of Appeals affirmed. *White v. State*, No. 114,284, 2016 WL 3202889 (Kan. App. 2016) (unpublished opinion). The panel departed from the district court's analysis of the *Vontress* factors in some areas, as we will discuss more fully in our analysis. White then petitioned for review, which we granted.

ANALYSIS

As we stated in our factual discussion, K.S.A. 60-1507(f) imposes a one-year time limit for filing a motion under its provisions. The time begins to run when specified events occur. In White's case, the time was measured from the date of the Court of Appeals mandate in his direct appeal. But that time "may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f). White had the burden to establish manifest injustice by a preponderance of the evidence. See Supreme Court Rule 183(g) (2018 Kan. S. Ct. R. 223).

In *Vontress*, we interpreted the words "manifest injustice," which are not defined in 60-1507. We determined the words mean "obviously unfair" or "shocking to the conscience." 299 Kan. at 614. We then reviewed decisions from the Kansas Court of Appeals and federal courts to determine how to evaluate whether manifest injustice exists. 299 Kan. at 614-17. Synthesizing those decisions, we identified a nonexhaustive list of three factors for judges to consider under a totality of the circumstances approach. The three listed factors are:

> "(1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.,* factual, not legal, innocence." 299 Kan. at 616.

7

We also explained: "All of the factors considered under the totality of the circumstances need not be given equal weight, and no single factor is dispositive." 299 Kan. at 616. As our factual discussion indicates, both the district court and the Court of Appeals considered these three factors.

After the Court of Appeals decision, the Legislature amended K.S.A. 60-1507. L. 2016, ch. 58, § 2. These amendments listed the factors a court may consider when determining whether the manifest injustice exception applies to an untimely 60-1507 motion. K.S.A. 2017 Supp. 60-1507 now allows courts to consider only (1) a movant's reasons for the failure to timely file the motion (*Vontress*' first factor) or (2) a movant's claim of actual innocence (*Vontress*' third factor). The Legislature did not adopt the second *Vontress* factor of whether there existed a "substantial issue of law or fact," nor did it incorporate *Vontress*' allowance for other, nonlisted factors. See *Hayes v. State*, 307 Kan. 9, 14, 404 P.3d 676 (2017). In *Hayes*, we noted: "Even a cursory review of the legislative history reveals to us that the Legislature intended to abrogate our decision in *Vontress*." 307 Kan. at 14.

The Legislature was silent about whether the statute would operate prospectively or retroactively. We acknowledged the resulting uncertainty in *Hayes*, but we decided not to address it there because only one party had briefed the issue. Here, after we accepted review of this case, we issued an order and asked the parties to address the question. The issue is now fully presented for our resolution.

1.      *Do the 2016 Amendments to K.S.A. 60-1507 Apply Retroactively?*

The question of whether the 2016 amendments to K.S.A. 60-1507 can be applied retroactively presents an issue of first impression for this court. But the various panels of

8

the Kansas Court of Appeals have addressed the question in many cases. The various decisions fall into three categories.

Most panels have followed the lead of one of the earliest panels to address the question: *Perry v. State*, No. 115,073, 2017 WL 462659, at *3 (Kan. App.) (unpublished opinion), *rev. granted* 306 Kan. 1319 (2017). The *Perry* panel held the 2016 amendments can be applied retroactively and thus judges could not consider the second *Vontress* factor. See, e.g., *Bradford v. State*, No. 117,354, 2017 WL 6062089, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* January 3, 2018; *Wildy v. State*, No. 117,375, 2017 WL 4847851, at *3 (Kan. App. 2017) (unpublished opinion); *Johnson v. State*, No. 116,702, 2017 WL 4700131, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 6, 2017; *Gholston v. State*, No. 116,114, 2017 WL 4558230, at *5 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 13, 2017; *Parks v. State*, No. 116,748, 2017 WL 4324661, at *2 (Kan. App. 2017) (unpublished opinion), *rev. denied* May 8, 2018; *Gant v. State*, No. 116,115, 2017 WL 3669078, at *2 (Kan. App. 2017) (unpublished opinion); *State v. Phoenix*, No. 115,694, 2017 WL 1826048, at *3 (Kan. App.) (unpublished opinion), *rev. granted* 306 Kan. 1328 (2017); *Garcia-Gomez v. State*, No. 116,018, 2017 WL 3447781, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* September 8, 2017; *Rojas-Marceleno v. State*, No. 115,140, 2017 WL 1196731, at *4 (Kan. App. 2017) (unpublished opinion), *rev. denied* December 22, 2017; *Olga v. State*, No. 115,334, 2017 WL 840296, at *3 (Kan. App. 2017) (unpublished opinion), *rev. granted* 306 Kan. 1319 (2017).

Other panels have declined to resolve the retroactivity issue and have applied (1) the *Vontress* factors or (2) both the *Vontress* factors and the 2016 amendments. See, e.g., *Cox v. State*, No. 116,449, 2018 WL 1660452, at *3 (Kan. App. 2018) (unpublished opinion); *Rowell v. State*, No. 115,711, 2017 WL 4216152, at *2 (Kan. App. 2017)

(unpublished opinion), *petition for rev. filed* October 17, 2017; *Dawson v. State*, No. 115,129, 2017 WL 262027, at \*2 (Kan. App. 2017) (unpublished opinion), *rev. granted* December 22, 2017; *Robinson v. State*, No. 115,555, 2017 WL 2494964, at \*3-4 (Kan. App. 2017) (unpublished opinion); *Ebihara v. State*, No. 114,115, 2016 WL 6441547, at \*2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1317 (2017); *Gilbert v. State*, No. 113,240, 2016 WL 4414611 (Kan. App. 2016) (unpublished opinion).

In the third group, a few Court of Appeals panels considered retroactivity and refused to apply the 2016 amendments because doing so would prejudice the movants. See *Walker v. State*, No. 115,479, 2017 WL 4183238, at \*3 (Kan. App. 2017) (unpublished opinion); *Noyce v. State*, No. 114,971, 2017 WL 3112821, at \*7 (Kan. App. 2017) (unpublished opinion), *rev. granted* December 22, 2017; see also *State v. Tran*, No. 115,813, 2017 WL 3202966, at \*5 (Kan. App. 2017) (unpublished opinion) (determining it need not decide the issue because an earlier appeal had determined the courts should allow the movant to file an untimely motion), *petition for rev. filed* August 28, 2017.

We agree with those decisions in which the panels declined to apply retroactively the 2016 amendments found in K.S.A. 2017 Supp. 60-1507. To explain that conclusion, we begin with three general observations. First, the question of retroactive application of a statute presents an issue of law. See *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015). Second, we have described K.S.A. 60-1507(f) as a "statute of limitations." *Thompson v. State*, 293 Kan. 704, 711, 270 P.3d 1089 (2011). Third, while "[a] statute of limitations is a procedural rule, which means changes typically apply retroactively," a change to the statute of limitations does not have retroactive effect if it eradicates a vested right. *State v. Spencer Gifts*, 304 Kan. 755, 769, 374 P.3d 680 (2016). Most of the Court of Appeals panels recognized these concepts.

10

For example, in concluding the amendments should be applied retroactively, the panel in *Perry* noted the general rule that "a statute operates prospectively unless (1) the statutory language clearly indicates the legislature intended the statute to operate retrospectively, or (2) the change is procedural or remedial in nature. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252 (2016)." 2017 WL 462659, at *3; accord *Easterwood v. State*, 273 Kan. 361, 372, 44 P.3d 1209 (2002) (citing this rule in the context of a K.S.A. 60-1507 motion). The panel then noted: "[T]he statute's language does not clearly indicate the legislature intended it to apply retroactively. However, the amendment is procedural, not substantive." The panel also noted the general rule that even procedural rules cannot be applied retroactively if they eradicate a vested right. *Perry*, 2017 WL 462659, at *3.

The *Perry* panel then turned to a discussion of the term "vested right." Relying on this court's decision in *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 264 P.3d 102 (2011), the panel noted there are three factors to determine if the law violates a party's vested rights: "'(1) the nature of the rights at stake (e.g., procedural, substantive, remedial), (2) how the rights were affected (e.g., were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation.'" 293 Kan. at 460 (quoting *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 369, 892 P.2d 497 [1995]). In applying these factors, "[t]he first factor (the nature of the right) must be balanced against the others, including how the right was affected, whether a substitute remedy was provided, and the public interest furthered by the legislation." 293 Kan. at 462.

We have no disagreement with these general principles as set out by the *Perry* panel. Our disagreement lies with the panel's application of the vested-rights factors. The panel wrote: "Here, the amendment is clearly procedural. Second, the amendment only partially limits the inquiry for determining whether manifest injustice exists. Finally,

11

considering whether the movant raised substantial issues of law or fact deserving of consideration would essentially negate the time limitation of K.S.A. 2016 Supp. 60-1507(f)(1)." *Perry*, 2017 WL 462659, at *3.

As to the first factor, while we generally consider a statute limiting the time in which one can bring a claim to be procedural, we have recognized substantive or, at least, vested aspects when limitations periods change. See *Spencer Gifts*, 304 Kan. at 769 (citing *Lujan v. Regents of University of California*, 69 F.3d 1511, 1516-17 [10th Cir. 1995], for concept that "statutes of limitations have mixed procedural and substantive aspects"). For example, in *Spencer Gifts* we recognized that legislation lengthening the period of a statute of limitations cannot resurrect an already time-barred claim. 304 Kan. at 769. We also noted that legislation cannot remove or destroy a vested defense, even one of a procedural nature. See 304 Kan. at 769 (citing *Tonge v. Werholtz*, 279 Kan. 481, 488-89, 109 P.3d 1140 [2005]). The 2016 amendments eliminated White's ability to argue manifest injustice arose because substantial issues of law or fact warranted the district court's consideration.

In discussing the second vested-rights factor, which requires considering how the right was affected, the *Perry* panel noted a post-2016 movant could establish manifest injustice by satisfying the first or third *Vontress* factors. The panel thus concluded this factor weighed against finding a vested right. See 2017 WL 462659, at *2-3. The panel, however, did not discuss two important parts of *Vontress*' analysis that shift this factor toward the determination that White had a vested right.

First, the *Vontress* court explained the three factors were not exclusive. 299 Kan. at 616. This means that the Legislature removed a plethora of potential considerations, not just the second *Vontress* factor.

12

Second, the *Vontress* court explained the manifest injustice determination must depend on "the totality of the circumstances," noting each factor "need not be given equal weight, and no single factor is dispositive." 299 Kan. at 616. This means that courts should not simply tally the factors and determine, for example, that a movant had established manifest injustice simply because two out of three factors favored that outcome. Instead, a court applying the *Vontress* factors must consider all the circumstances and determine if, in total, those circumstances create a situation in which it would be obviously unfair or shocking to the conscience to not allow a movant to pursue relief under 60-1507.

Thus, the 2016 Legislature took away more than one factor. It prohibited courts from looking at *all* circumstances and assessing them in totality. As a result, the 2016 Legislature barred relief for any movant who could establish an error or several errors in the trial court proceedings that are so egregious they cause a court, considering the totality of the circumstances, to declare it "obviously unfair" or "shocking to the conscience." For some movants, the 2016 amendments may remove any possibility of relief from a manifestly unjust situation.

Moving to the third vested-rights factor, the *Perry* panel determined the second *Vontress* factor negates the legislative intent behind the one-year time limitation for filing a 60-1507 motion. 2017 WL 462659, at *3. But the panel failed to discuss the *Vontress* court's analysis of this argument. See *Vontress*, 299 Kan. at 614-18.

The *Vontress* court recognized the legislative intent to promote the finality of judgment, an intent furthered by the one-year limitation. It also noted the potential for the second factor's consideration of the merits to "'render the 1-year time limitation under K.S.A. 60-1507(f)(1) essentially meaningless.' [Citation omitted.]" Accordingly, the *Vontress* court stated: "The time limitation of subsection (f)(1) necessarily prevents the

13

consideration of the merits in some circumstances, *i.e.*, when there is no manifest injustice." *Vontress*, 299 Kan. at 618.

The *Vontress* court determined this view reflected the Legislature's intent. The 2003 Legislature adopted the manifest injustice exception without limiting a judge's consideration. See L. 2003, ch. 65, § 1. Given the unrestricted reference to manifest injustice, the second *Vontress* factor furthered the then-stated legislative intent. In fact, it would have been contrary to the plain language of the statute to foreclose an avenue that might reveal a manifest injustice. See 299 Kan. at 611 ("[T]he best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used," and courts are "'not free to speculate and cannot read into the statute language not readily found there.'").

We, thus, conclude all the *Brennan* vested-rights factors reveal the Legislature destroyed vested rights with the 2016 amendments. White, like other pre-July 1, 2016, movants had a vested right to argue the *Vontress* test, including the second factor and any other factor that might establish manifest injustice. If these factors, in the totality of the circumstances, reveal that it would be obviously unfair or shocking to the conscience to not allow White to pursue an untimely collateral attack on a conviction or sentence, he has a right to have the court extend the one-year limitation period.

In addition, besides the vested-rights consideration, this case fits another recognized exception to the general rule that an appellate court applies the procedural laws in effect at the time of its decision. Under this additional exception, courts do not give retroactive effect to changes in the law when doing so would result in manifest injustice. See *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 717, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974). "Although the precise category of cases to which this exception applies has not been clearly delineated," 416 U.S. at 717, we cannot imagine a better

situation to apply the exception. Here, for White to succeed he must prove manifest injustice. It would be manifestly unjust to apply the 2016 amendments if White can establish manifest injustice by using factors not included in them.

A final consideration arises because the State argues the general rule about the presumed prospective application of a statute does not apply when amendments merely clarify legislation. For support, the State cites *State v. Dawson*, 55 Kan. App. 2d 109, 408 P.3d 995 (2017), *petition for rev. filed* January 1, 2018.

*Dawson* involves legislative amendments to a different statute, K.S.A. 22-3504. In determining whether these amendments applied retroactively, the *Dawson* panel relied on the decision of another Court of Appeals panel in *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 82 P.3d 861 (2004). The *Dawson* panel noted that the *Hunt* panel had determined the prospective-application presumption does not apply "'when an amendment merely clarifies rather than changes a statute.' 32 Kan. App. 2d at 358." *Dawson*, 55 Kan. App. 2d at 116. *Dawson* did not delve too deeply into the way this exception has been applied. Instead the *Dawson* panel moved to a discussion of the retroactive application of the statute under the caselaw of this court. 55 Kan. App. 2d at 116. *Hunt*, on the other hand, discussed the exception in more detail.

The *Hunt* panel cited three federal Circuit Court of Appeals decisions as authority for the clarification exception: *Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1283 (11th Cir. 1999), *cert. denied* 528 U.S. 1136 (2000), *Beverly Community Hosp. Ass'n v. Belshe*, 132 F.3d 1259 (9th Cir. 1997), *cert. denied* 525 U.S. 928 (1998); and *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 941 (10th Cir. 1994). These cases make clear that the exception has tight parameters. As stated in *Piamba Cortes*, 177 F.3d at 1283, the exception applies only when an amendment is "deemed to clarify relevant law rather than effect a substantive change in the law." Accord *Quinlan*, 25 F.3d at 941 (refusing to

apply exception because "amendment is a substantive rather than clarifying amendment").

Thus, even if we were to decide to adopt this exception as part of Kansas law, a decision we need not make today, it would not apply to the 2016 amendments to 60-1507. The legislative history clearly reflects the Legislature intended to change the substance of the law established by *Vontress*. See *Hayes*, 307 Kan. at 14.

We hold the amendments to K.S.A. 60-1507 adopted in L. 2016, ch. 58, § 2, do not apply retroactively to motions filed before July 1, 2016. This means the new provisions do not apply to White's motion, which must be analyzed based on the *Vontress* factors.

2.      *Did White Establish Manifest Injustice?*

Before we consider whether the district court and Court of Appeals correctly applied the three *Vontress* factors, we need to consider the appropriate standard for our review of the district court's decision. When we review rulings on 60-1507 motions, the standard of review varies depending on what procedure the district court used. A district court may follow one of three procedural paths:

> "'(1) The court may determine that the motion, files, and case records conclusively show
> the prisoner is entitled to no relief and deny the motion summarily; (2) the court may
> determine from the motion, files, and records that a potentially substantial issue exists, in
> which case a preliminary hearing may be held. If the court then determines there is no
> substantial issue, the court may deny the motion; or (3) the court may determine from the
> motion, files, records, or preliminary hearing that a substantial issue is presented
> requiring a full hearing.'" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162
> (2014) (quoting *Fischer v. State,* 296 Kan. 808, 822-23, 295 P.3d 560 [2013]).

16

Here, the district court followed the second path. In such cases, we review the district court's findings of fact to determine whether the findings are supported by substantial competent evidence and whether they suffice to support the district court's conclusions of law. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015) (quoting *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 [2013]). We do not reweigh evidence, make credibility determinations, or resolve conflicts in evidence; we give great deference to a district court's factual findings. 301 Kan. at 461. In addition to this review of the findings, "the district court's conclusions of law and its decision to grant or deny the 60-1507 motion are reviewed using a de novo standard." *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007); see *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011).

With that in mind, we turn to the *Vontress* test. Again, courts consider all factors under the totality of the circumstances rather than balancing factors against each other, need not give the factors equal weight, and should not consider any single factor dispositive. *Vontress*, 299 Kan. at 616.

*Factor 1: Do persuasive reasons or circumstances explain the prisoner's failure to file within the one-year time limitation?*

In considering the first *Vontress* factor, the Court of Appeals panel concluded: "White has shown at least a fair, if not persuasive, reason for the delay in filing his 60-1507 motion." *White*, 2016 WL 3202889, at *3-4.

Before we discuss what led to this conclusion, we pause to emphasize that White alleges he did not receive notice of the Court of Appeals' adverse decision or of the mandate that triggered the one-year limitation of 60-1507(f). This means he allegedly lost

the ability (1) to timely file a petition for review in his direct appeal, a claim made in his 60-1507 motion, and (2) to file a timely 60-1507, the claim pursued at the preliminary hearing on the 60-1507 motion. Thus, he potentially lost complete access to two state judicial proceedings and may be barred from seeking federal habeas review because he failed to exhaust state remedies when he did not file a petition for review. See 28 U.S.C. 2254(b)(1)(A) (2012); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (concluding exhaustion doctrine requires state prisoners "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); see also *Prendergast v. Clements*, 699 F.3d 1182, 1185 (10th Cir. 2012) (rejecting argument prisoner should be excused from exhaustion requirement because he was now procedurally barred from pursuing review in state court, citing *O'Sullivan*, 526 U.S. at 848); *Joeckel v. Cline*, No. 16-3209-DDC, 2018 WL 2159787, at *5 (D. Kan. 2018) (concluding prisoner who failed to file a timely petition for review with the Kansas Supreme Court failed to exhaust state-court remedies because he failed to "invoke 'one complete round' of Kansas's appellate review,'" quoting *O'Sullivan*, 526 U.S. at 845).

The loss of access to these judicial proceedings results in the deprivation "'of more than a *fair* judicial proceeding,'" it results in the deprivation of an appellate and a federal "'proceeding altogether . . . . [And] we cannot accord any '"presumption of reliability"' [citation omitted] to judicial proceedings that never took place.'" *Kargus v. State*, 284 Kan. 908, 920, 169 P.3d 307 (2007) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S. Ct. 1029, 145 L. Ed. 2d 985 [2000]).

*Kargus*, as well as *Swenson v. State*, 284 Kan. 931, 169 P.3d 298 (2007), discussed this loss in the context of an allegation that ineffective assistance of counsel resulted in a failure to preserve the right to file a petition asking for this court's discretionary review of a Court of Appeals decision. Likewise, the impact on White's

ability to access either or both legal proceedings at issue causes this to be a significant circumstance that could reveal manifest injustice if White presented credible evidence that he did not receive notice.

So did White present credible evidence at the preliminary hearing in district court? On one aspect, there is no question; he presented undisputed evidence that he never knew the mandate had issued. Both his testimony and his appellate defender's affidavit establish this fact. But neither the district court nor the Court of Appeals seemed to put much weight on this undisputed fact. Both courts focused instead on whether White should have been aware the mandate would issue if he did not respond to the ADO's January 2013 letter, which White denies receiving.

The district court said:

> "The Court finds first that it's not shocking to the conscience of the Court when the appellate defender in this case has represented that they did advise the inmate client of the unsuccessful outcome of his appeal, and they did so through normal mailing channels and which the inmate now claims in rather self-serving fashion that he actually didn't receive that communication even though he apparently received other communications sent from the same appellate defender's office without a problem."

The district court went on to determine the first *Vontress* factor did not weigh in White's favor because he had an independent duty to check regularly on the status of his direct appeal.

On review of those findings, the Court of Appeals panel noted: "The ADO has never produced a file copy of that letter. It is, therefore, entirely possible one was never sent or it was sent to the wrong place." *White*, 2016 WL 3202889, at *3. The parties'

19

arguments before us suggest no reason we should reject this conclusion, especially since the appellate defender's affidavit never mentions a January 2013 letter.

The panel also stated: "The district court characterized White's testimony about not receiving the letter as 'self-serving.' That's certainly an apt label. But it is not a credibility determination against White. The testimony, whether true or false, was by its very content self-serving in the sense of advancing White's legal point." 2016 WL 3202889, at *3. Again, we agree with the panel's observations about the district court's use of the words "self-serving."

That said, while we agree the self-serving comment is not by itself a determination of credibility, we cannot discern with certainty whether the district court believed White. In part, this is because some of the district court's findings do not support a credibility determination. For example, the mere fact that White received some communications from the ADO does not disprove his statement that he did not receive the critical, January 2013 letter informing him the Court of Appeals had rejected his direct appeal arguments. Ambiguity about the district court's meaning also arises from the district court's use of the "shocking to the conscience" language. This statement makes it difficult to determine whether the district court was (1) accepting White's self-serving testimony as true, but finding those circumstances were not shocking to the conscience, or (2) finding his testimony to be incredible. We are left without a clear credibility determination.

The Court of Appeals panel next criticized the district court's emphasis of White's duty to monitor his ongoing litigation. The panel stated:

> "Criminal defendants may expect and rely on their lawyers to monitor legal milestones and deadlines and to keep them informed about the implications of material events. We don't see criminal defendants having an independent duty to effectively act as their own cocounsel to routinely review those circumstances or to contact their lawyers

20

periodically, say weekly or monthly, to ask if anything has happened." 2016 WL 3202889, at *3.

As the panel stated, a criminal defendant should be able to rely on counsel to protect his or her legal interest; a criminal defendant need not act as cocounsel in his or her case.

Even so, the panel recognized there is "some outer limit as to how long a criminal defendant reasonably might wait to hear from his or her lawyer about the status of a direct appeal." The panel rejected the possibility of defining "a fixed time period applicable to every case" in favor of considering the "circumstances of a given case." Considering the circumstances of White's situation, the panel concluded it "cannot say White exceeded some reasonable outer limit." 2016 WL 3202889, at *4. We agree with the panel.

We also join the panel in expressing our concern over the practice by which the ADO considers silence to be permission to take no further action on a client's behalf. As the panel rightly noted, "silence was equally compatible with White having never received the letter at all, something that would have to be considered reasonably foreseeable especially within the corrections system." 2016 WL 3202889, at *3. This echoes the concern we raised in *Kargus* and reiterate here:

> "[W]e strongly urge counsel to follow the teaching of K.A.R. 105-3-9(a)(3) which directs counsel to 'file notice of appeal in a timely manner, unless a waiver of the right to appeal has been signed by the defendant.' The guidance, although not directly applicable, is sound: Written communications document the exchange between counsel and the defendant. It would be prudent for counsel to document any such exchange regarding filing of a petition for review." 284 Kan. at 928.

21

Valuable rights may be lost when silence is treated as consent. A written communication waiving a petition for review better protects (1) the client's rights and (2) the judgment against a later attack based on a claim of ineffective assistance of counsel. Here, we are left with no paper trail to confirm whether White received notice and purposefully elected to waive his right to file a petition for review or a 60-1507 motion.

We know White promptly filed his 60-1507 motion after his appellate defender advised him the direct criminal appeal had concluded. As the panel noted, nothing in the record revealed White "dawdled in asserting his habeas corpus claims." 2016 WL 3202889, at *4. We agree.

What does all this ultimately mean to our consideration of the first *Vontress* factor? In essence, we agree with the panel that White's reason for the delayed filing, if true, would support concluding he asserted persuasive reasons or circumstances that would be a significant factor in evaluating the totality of the circumstances. The "if true" phrase is critical to knowing whether White met his burden on this first factor, and we cannot resolve that question without a clear credibility finding from the district court.

As a result, we remand this matter to the district court for further proceedings and an explicit determination of White's credibility about the receipt of the January 2013 letter. Even if the district court determines White's testimony is incredible, meaning he received the letter and knew the Court of Appeals had determined his appeal lacked merit, the district court should consider the significance of that given the seemingly undisputed evidence that the ADO did not send notice of the mandate.

We address the second and third *Vontress* factors to guide the district court on remand.

*Factor 2: Do the merits of White's claim raise substantial issues of law or fact deserving of the district court's consideration?*

The Court of Appeals panel weighed the second *Vontress* factor against White. The panel noted White had made three assertions on appeal: (1) White's trial attorney failed to file a motion to suppress evidence; (2) his trial attorney failed to undertake adequate discovery; and (3) "the district court misinformed him about the maximum sentence he faced when he entered the no-contest plea." 2016 WL 3202889, at *4. White's brief also alleged his trial attorney failed to explain the potential penalty. Still, the panel could fully analyze only one of these allegations—the one related to the district court's exchange with White about his sentence—because the preliminary hearing did not address the other allegations.

As to the allegation about what White had been told about his sentence, the district court reviewed the plea hearing record. It focused on White's statement that he understood his possible sentence to be "Twenty-five to life, Your Honor." The district court found White was aware "he was going to receive not less than 25 years of incarceration and as much as life incarceration."

The Court of Appeals, however, reviewed these same facts and noted the district court did not clearly state the term of sentence White would face if he entered a guilty or no-contest plea. See *State v. Shaw*, 259 Kan. 3, Syl. ¶ 7, 910 P.2d 809 (1996) (holding due process requires district court inform criminal defendant of maximum potential sentence); K.S.A. 2017 Supp. 22-3210(a)(2) (district court must inform defendant "of the maximum penalty provided by law which may be imposed upon acceptance of such plea"). The panel pointed out that White's answer of "Twenty-five to life, Your Honor" could mean that White "thought the district court would impose a term of incarceration of some length between 25 years and life." As a result, the Court of Appeals concluded the

23

record did not include clear information about the possible penalty. That said, the panel noted: "White was 68 years old when he entered his plea" and "[a]ctuarially and practically, given his age, White reasonably had to recognize he would spend the rest of his life in prison were his request for a departure sentence denied. Accordingly, he was not materially misled during the plea hearing or not in a manner rising to manifest injustice." 2016 WL 3202889, at *5.

We agree with the panel's legal conclusions that (1) White's answer revealed an imprecise understanding of the sentence but (2) the lack of clarity did not materially mislead White or occur in a manner rising to manifest injustice.

As to White's claim about his trial counsel's failure to inform him of the consequences of his plea, the Court of Appeals had no evidence or findings. Nor did White's brief develop this issue. These problems also affected the panel's ability to analyze White's other allegations.

For example, in addressing White's contention that his trial counsel was ineffective because he did not move to suppress, the panel found White had "not explained what evidence could have or should have been suppressed. We infer the evidence included inculpatory statements he made to law enforcement officers. But White does not elaborate on any legal argument that might have warranted the exclusion of those statements or any other evidence." 2016 WL 3202889, at *4. The panel likewise determined White had not sustained his burden on his assertion about trial counsel's failure to seek discovery of evidence. The panel noted White had not identified the "particular discovery the lawyer overlooked or how that discovery would have unearthed materially exculpatory evidence." 2016 WL 3202889, at *4.

24

While these conclusions accurately reflect the cursory nature of White's brief before the Court of Appeals, we note these conclusions do not reflect the arguments made in White's pro se motion. For example, White argued in his motion that his trial counsel should have sought the medical records of the victim. He explained the basis for his assertion and the reasons he felt the records would contain exculpatory material. He also made other arguments his attorneys did not raise during the district court's preliminary hearing or in the Court of Appeals.

We do not fault the Court of Appeals for failing to cite these assertions from White's motion. White's brief before the Court of Appeals did not mention these details, and it addressed the second factor only in the most cursory fashion (devoting fewer than 70 words to explaining his contentions). Without question, the Court of Appeals correctly concluded these matters were not adequately briefed on appeal. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) ("Issues not adequately briefed are deemed waived or abandoned.").

We mention these allegations to point out there may be more arguments to consider on remand than White's counsel presented in the first hearing. This possibility arises because White's habeas counsel did not ask White any questions about these assertions—or for that matter many of the other arguments White had raised in his pro se motion. Normally, we would take this as an indication counsel had made a professional judgment he could not argue these allegations in good faith. Here, however, we hesitate to reach that conclusion for two reasons. First, White's habeas counsel seemed unaware of the *Vontress* factors until the State argued them during the preliminary hearing. Second, White's habeas counsel asserted some of these additional allegations in White's appellate brief. But, in doing so, he was limited in what he could advance because the only evidence in the record about any of the merits-based claims came from questions asked by the State. White and his counsel, not the State, should define the issues.

25

As a result, we direct the district court on remand to determine whether White's habeas counsel wants an opportunity to reopen consideration of this *Vontress* factor. We understand this may lead to another evidentiary hearing because some of White's allegations are fact dependent. For example, White asserted his trial attorney spoke with him the day before trial and said "he would not take [my] case to trial the next day (set for 12-13-2011). Counsel told [me] that he would 'shred' the alleged victim to 'pieces' at a trial, but he would not do that." White also stated that his attorney told him to take the plea and to say "yes" to anything the judge asked. After this conversation, according to White, he "did not believe he had any other choice but to agree to the plea . . . . Trial counsel never told [me I] would get a 'Life' sentence . . . . [I] wanted [my] day in court at a jury trial so that the truth would come out that [I] had not raped the alleged victim." After the district court ruled against White, he filed a pro se motion to alter or amend judgment. Again, he emphasized these points. He said his trial attorney coerced him into admitting guilt and "undermined the Defense to plea to a crime that [I] did not commit."

White is entitled to full consideration of the second *Vontress* factor, and it is not clear that has happened.

*Factor 3: Does White set forth a colorable claim of actual innocence?*

The panel concluded the third factor "falls heavily against" White because he had not asserted "a claim of actual innocence, let alone demonstrated some colorable support for it." *White*, 2016 WL 3203889, at *5. This conclusion reflects the way White's appellate counsel argued this issue on appeal. But as we have just quoted, White did assert a claim of actual innocence in his 60-1507 motion, stating he wanted "a jury trial so that the truth would come out that he had not raped the alleged victim." In addition to the previously quoted portions of the record, White also alleged he had "remained

26

consistent that he had not raped the (alleged) victim, according to the hearing record"; he "wanted his day in court at a jury trial so that the truth would come out that he had not raped the alleged victim"; and "I wanted to go to trial because I had not raped anyone." Then, in his motion to alter or amend the judgment, he stated that his trial attorney "undermined the Defense to plea to a crime that he did not commit."

The district court refused to alter the judgment, finding that White had failed to make his claim of actual innocence earlier in the proceeding. But White did state in his motion that he had not raped anyone. On remand, the district court should make findings about White's claim of innocence. Without these findings, we cannot perform our review of the third factor. In evaluating White's actual innocence claim, the district court should apply the standard articulated in *Beauclair v. State*, 308 Kan. ___, ___ P.3d ___ (filed June 22, 2018).

*Totality of the Circumstances*

As we have discussed, under *Vontress*, a court is to consider the totality of the circumstances, with no one factor being determinative. Here, the panel considered each factor independently, and at the end of its analysis of each factor considered whether it favored White. See *White*, 2016 WL 3202889, *4-6. Other than statements at the end of each section, we see no consideration of how these factors influenced the totality of the circumstances. It appears the evaluation of the totality of the circumstances by the Court of Appeals was a tallying of the factors. But this mechanical, mathematical weighing of the factors is not the standard. Instead, the district court must consider the totality of the circumstances on remand.

CONCLUSION

Upon the record before us, we cannot determine whether White has established manifest injustice. We remand to the district court for further proceedings.

The decision of the Court of Appeals is reversed. The district court's decision denying White's motion for relief under 60-1507 is reversed, and the case is remanded to the district court for further proceedings.

\* \* \*

JOHNSON, J., concurring in part and dissenting in part: I agree with the majority's determination that the 2016 amendments to K.S.A. 60-1507 do not apply retroactively and that the *Vontress* test applies in this case. But I do not find that holding to be critical to this case, because, in my view, the defendant meets either test. Consequently, I agree that the rulings of the Court of Appeals and the district court must be reversed and that the case must be remanded to the district court. But because I find the record sufficient for me to discern a manifest injustice, I would remand for the district court to conduct an evidentiary hearing on the merits of Stephen D. White's motion.

Both the amended statutory provisions and the *Vontress* test permit a district court to consider the reasons a K.S.A. 60-1507 movant did not meet the one-year limitation. *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014). Of course, in order to file a motion within a limitation period, the movant needs to know when the limitation period begins to run and the length of the period. It is manifestly unjust to expect defendants to intuitively know when their K.S.A. 60-1507 clock begins to tick. See Supreme Court Rule 7.03(b)(1)(A) (2018 Kan. S. Ct. R. 44) (describing multiple different events triggering when the appellate court's mandate will issue); Supreme Court Rule

28

7.03(b)(1)(B) (2018 Kan. S. Ct. R. 45) ("The court may shorten or extend the time for issuing the mandate."). The majority intimates that the event triggering the one-year period can vary, noting that here "the time was measured from the date of the Court of Appeals mandate in [White's] direct appeal." Slip op. at 7. And the majority acknowledges that the evidence in the record before us is "undisputed" that White did not possess that knowledge; both White's testimony and his appellate attorney's affidavit establish that White was not advised when the mandate was issued. Moreover, it is clear that the attorney did not identify the mandate as a clock-starting event or advise White of the length of the K.S.A. 60-1507 limitation period.

Denying a person a significant legal process based on untimeliness, when the person's legal representative did not advise him or her when the limitation period would commence or how long it would last, shocks my conscience. Appellate counsel's belief that he sent White a letter, advising that the appeal had been unsuccessful, is simply a red herring. It proves nothing with respect to the K.S.A. 60-1507 limitation period.

Although the foregoing is enough, the majority describes additional reasons in support of manifest injustice. The district court was simply wrong in finding that White did not claim to be innocent. Further, the claims of error were at least colorable. I perceive of no way in which I could vote to uphold a district court ruling on remand that White had not established the manifest injustice which would permit him to proceed with his 60-1507 motion. Accordingly, I dissent from the majority's remand directions.