NOT DESIGNATED FOR PUBLICATION

No. 122,880

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KYLE R. BELTZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 9, 2021.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM:  Kyle R. Beltz appeals the district court's denial of his K.S.A. 60-
1507 motion without holding an evidentiary hearing. In 2014, a jury convicted Beltz of
attempted possession of marijuana with the intent to distribute and first-degree felony
murder. Beltz' K.S.A. 60-1507 motion alleged various claims including ineffective
assistance of trial counsel. The district court appointed counsel to represent Beltz but
denied the motion after conducting a preliminary hearing. On appeal, Beltz claims the
district court should have granted him an evidentiary hearing on his ineffective assistance
of counsel claim. Finding no error, we affirm the district court's judgment.

1

## Factual and Procedural Background

The Kansas Supreme Court summarized the facts of Beltz' convictions:

"Ronald Betts suffered multiple gunshot wounds during a botched drug deal, which resulted in his death. A jury convicted Betts' partner, Kyle Beltz, of felony murder for Betts' death during the attempted drug sale. Betts knew and was on good terms with both Beltz and Beltz' girlfriend, Kelly Touchton. Beltz and Touchton lived together, and Betts would occasionally use their home—which contained a marijuana grow operation—and the adjacent parking lot as a staging ground to sell marijuana.

"On April 17, 2013, another acquaintance of Betts, Kyler Carriker, sent a text message to Beltz telling him that he wanted to purchase marijuana. Beltz put Carriker in touch with Betts, and the deal was set to occur the following day outside the Beltz/Touchton residence. Betts' wife, Jennifer, testified that on April 18, 2013, Betts left their house saying he was going to Beltz' home to meet some people and make a deal. She stated that she saw the marijuana Betts took to sell that night.

"Touchton testified that at around 6 or 7 p.m. on April 18, Beltz and Carriker left the Beltz/Touchton residence to run an errand in Carriker's truck. While they were gone, Betts arrived at the house. Touchton let Betts inside and went down to the basement to organize her art supplies. Later that evening, Touchton heard her dogs barking and returned to the main floor to investigate the cause. She saw Betts and Carriker come in the front door with three men she did not recognize, who were later identified as Lorenzo Spires, Dennis Haynes, and John Carter. She did not see Beltz. Touchton assumed Betts and Carriker were conducting a drug deal with the three unknown men, and she noticed that everyone was 'acting so stiff.' Touchton knew that Carriker and Betts each carried a gun and that Beltz kept a shotgun in the house.

"When Touchton went to the kitchen to get some ice, she heard several high-pitched gunshots and fell to the ground beside the refrigerator. She heard both the high-pitched gunshots and the sound of a shotgun firing. Shortly thereafter, Touchton saw one of the three strangers enter the kitchen and point a gun at her. She heard a click and saw the man leave the kitchen. The man eventually returned and pulled her away from the

2

back door, saying 'move, bitch.' Touchton crawled to the bathroom and hid until the firing ceased.

"When the gunshots stopped, Touchton heard Beltz call out for Carriker. She came out of hiding and saw Carriker lying on the bedroom floor bleeding from his leg. Carriker said they had shot him and taken his gun. Betts was lying motionless on the living room floor. Spires, Haynes, and Carter were gone. When Beltz told Touchton to call the police, Carriker fled the house.

"Touchton testified that Beltz later told her Carriker had met the men interested in purchasing the marijuana and Carriker had contacted him to ask where he could buy the drugs. Beltz then contacted Betts, putting him in contact with Carriker. Beltz told Touchton that it was a deal between Betts and Carriker and that it was supposed to happen in front of a store beside their house rather than inside the house. Beltz explained that his role was 'to look out for [Betts and Carriker] and make sure that they were okay, that they didn't get robbed or nothing went wrong.'

"Beltz told police that he had been in the master bedroom when the shooting began. Beltz then grabbed his shotgun and went to a closet that connected the master bedroom and the front bedroom. When someone looked into the closet from the front bedroom, Beltz fired twice in that direction and then stumbled or fell backwards into the master bedroom. When Beltz heard someone outside the room, he fired one shot at the door separating the master bedroom and the living room and retreated to hide by the bed.

"The forensic pathologist who conducted Betts' autopsy testified that Betts was shot five times. Of the three gunshot wounds that contributed to his death, two were caused by handguns and one was from a shotgun. The shotgun wound was located on Betts' upper left abdomen, and the pellets perforated areas of the body including the left kidney, spleen, and lower left lobe of the lung.

"A jury convicted Beltz of attempted possession of marijuana with the intent to distribute and first-degree felony murder for the killing of Betts during the attempted distribution of marijuana. The district court sentenced Beltz to a hard 20 life sentence for the felony murder and 67 months for the attempted distribution, running concurrently with the life sentence." *State v. Beltz*, 305 Kan. 773, 773-75, 388 P.3d 93 (2017).

Beltz appealed, arguing, among other issues, that the district court erred in allowing the State to present evidence that he was growing marijuana in his basement and

3

evidence of prior sales by Betts at or near his home. This evidence had been admitted at Beltz' trial under K.S.A. 60-455 to prove knowledge and intent after the district court had conducted a pretrial hearing on the matter. Our Supreme Court found that Beltz did not lodge a contemporaneous objection at trial to evidence of the marijuana grow operation. 305 Kan. at 776. As for his challenge about prior sales, the court pointed out that Beltz objected only to Touchton's testimony on the subject and did not object to Jennifer Betts' testimony or a detective's testimony on the same subject. Thus, the court found that Beltz waived or abandoned his challenge to the K.S.A. 60-455 evidence and the issue was not properly preserved for appellate review. 305 Kan. at 777. Our Supreme Court addressed the other appellate issues Beltz raised and affirmed his convictions. The clerk of the appellate courts issued the mandate on March 2, 2017.

On December 15, 2017, Beltz timely filed a K.S.A. 60-1507 motion, asserting (1) various ineffective assistance of counsel claims; (2) insufficient evidence supported the crime of possessing marijuana; (3) various speedy trial claims; (4) the judge committed multiple incidents of judicial misconduct; and (5) the State committed prosecutorial misconduct. As for the ineffective assistance of counsel claims, the motion alleged that Beltz' trial counsel, Mark Severt, was ineffective in representing Beltz for many reasons including the fact that Severt failed to lodge a contemporaneous objection at trial to the K.S.A. 60-455 evidence, thus failing to preserve that issue for appeal.

The district court appointed counsel to represent Beltz in the matter. The State responded to Beltz' motion. Beltz later moved to amend his motion to add a claim of newly discovered evidence: an affidavit from Kyler Winn (formerly Carriker), stating that Beltz tried to back out of the drug deal underlying Beltz' felony murder conviction.

On May 21, 2019, the district court held a preliminary hearing on Beltz' K.S.A. 60-1507 motion. Beltz was not present at the hearing but was represented by counsel. Counsel offered extensive arguments to the district court, but the arguments focused on

4

Beltz' motion to add the claim of newly discovered evidence and the effect that evidence would have on Beltz' felony murder conviction. After hearing arguments of counsel, the district court granted Beltz' motion to amend to add the claim of newly discovered evidence, but the district court then denied relief on all claims under K.S.A. 60-1507. Beltz timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING BELTZ' K.S.A. 60-1507 MOTION?

On appeal, Beltz asserts that he was "most entitled to an evidentiary hearing" on his claim that Sevart was ineffective for failing to lodge a contemporaneous objection to the evidence of the marijuana grow operation and to the evidence of prior sales of marijuana at or near his home. He argues that Sevart's failure to lodge a contemporaneous objection prevented the Kansas Supreme Court from addressing the admissibility of this evidence in his direct appeal. Beltz does not renew on appeal any of the other claims he made in his K.S.A. 60-1507 motion including his amended claim of newly discovered evidence. Thus, he has waived any challenge to the district court's denial of the remaining claims in his K.S.A. 60-1507 motion. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (stating an issue not briefed is waived or abandoned).

The State argues that Sevart was not ineffective for failing to object to the testimony at issue because it would have been objectively unreasonable to do so, and any objection would have been overruled. The State also argues that Beltz cannot show prejudice because of the other properly admitted testimony that established Beltz played an "instrumental role in the drug deal."

A district court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2)

5

the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

When, as here, the district court holds a preliminary hearing, this court applies a bifurcated standard of review. This court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence. This court then reviews the district court's decision to deny the K.S.A. 60-1507 motion using the de novo standard of review. 308 Kan. at 504.

Beltz' sole claim on appeal is that he was denied the effective assistance of counsel. The Sixth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment, guarantees that in criminal prosecutions the accused has the right to effective assistance of counsel. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). An ineffective assistance of counsel claim based on deficient performance is subject to the two-prong *Strickland* test. *Sola-Morales*, 300 Kan. at 882-83 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

> """The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

"""[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citations omitted.]""" *State v. Butler*, 307 Kan. 831, 852-53, 416 P.3d 116 (2018).

*Did Sevart's failure to object to the K.S.A. 60-455 evidence constitute deficient performance?*

Beltz argues that Severt's performance was deficient when he failed to object at trial to the State's K.S.A. 60-455 evidence of the marijuana grow operation in Beltz' basement and the prior sales of marijuana at or near Beltz' home. Beltz asserts that this evidence was inadmissible under K.S.A. 60-455 to prove knowledge or intent, and Sevart's failure to object at trial led to the issue not being preserved for appeal.

To begin, Beltz fails to identify what specific evidence Sevart should have objected to at trial. Upon review of the record, the prior sales are discussed by many witnesses. And the grow operation is also discussed by many witnesses and presumably, based on the record's description of admitted exhibits, was depicted in crime scene photos admitted at trial. Beltz broadly asserts that any reference to the challenged evidence should have been objected to by Sevart at trial. In any event, even assuming Beltz is asserting that Sevart should have objected to every mention of the challenged evidence, Beltz fails to show that Sevart's failure to object was objectively unreasonable.

Beltz' entire defense to the felony murder charge was that he was not involved in the attempted marijuana sale that led to Betts' death. In anticipation of this defense, the State filed a pretrial motion under K.S.A. 60-455 to allow evidence that Beltz was growing marijuana in his basement and knew about Betts' prior sales of marijuana at or

7

near his home. The district court allowed the evidence to prove knowledge and intent. See K.S.A. 2020 Supp. 60-455(b) (stating evidence of a prior crime or civil wrong is admissible to a material fact such as intent or knowledge).

Although our Supreme Court did not reach the merits of this issue on appeal, we find that the challenged evidence was admissible under K.S.A. 60-455. The evidence that Beltz grew marijuana in his basement and knew about prior marijuana sales at or near his home was relevant and probative to whether he was involved in the attempted marijuana sale on April 18, 2013, and this was a material fact that was disputed by Beltz at his trial. The evidence was properly admitted under K.S.A. 60-455, and Sevart's failure to object to the evidence at trial was not objectively unreasonable. Thus, Beltz does not establish that Sevart's failure to object to the evidence constituted deficient performance.

*Was Beltz prejudiced by Sevart's failure to object?*

Even if Sevart's performance was deficient in failing to object to the K.S.A. 60-455 evidence, Beltz fails to show prejudice. Beltz asserts that he suffered prejudice because Sevart's failure to contemporaneously object prevented the Kansas Supreme Court from reaching the issue on his direct appeal. But even if our Supreme Court had reached the issue, Beltz would not have been entitled to relief.

Our Supreme Court reviews the erroneous admission of evidence for harmless error. *State v. Lowery*, 308 Kan. 1183, 1235-36, 427 P.3d 865 (2018). Under that standard the court would determine whether there was a "'reasonable probability that error will or did affect the outcome of the trial in light of the entire record.'" 308 Kan. at 1235.

Here, any error in admission of the K.S.A. 60-455 evidence would have been found harmless because other evidence at trial also showed that Beltz was involved in the attempted sale that day. For instance, Touchton testified that after the police released her

8

and Beltz, Beltz told her that he was supposed to look out for Betts and Carriker and make sure they did not get robbed. The State also admitted a phone call between Touchton and Beltz, in which Beltz again told Touchton that he had to be the look out and to act if something went wrong. There was also a text message between Beltz and Carriker in which Carriker asked Beltz if he could get weed and Beltz responded, "I got you." Thus, any erroneous admission of the prior sales and grow operation to establish Beltz' involvement was harmless based on the entire record. Because Beltz cannot show that our Supreme Court would have granted him relief had Sevart properly preserved the issue, he cannot establish that he suffered any prejudice from Sevart's failure to object.

In sum, Beltz failed to establish a viable claim that Sevart provided ineffective assistance of counsel based on the narrow issue he has raised on appeal. The district court properly made this determination without holding an evidentiary hearing. Thus, we conclude the district court did not err in denying Beltz' K.S.A. 60-1507 motion without holding an evidentiary hearing.

Affirmed.